ARTHUR ALBERS, APPELLEE, V. JOHN KIPP, APPELLANT.

FILED DECEMBER 6, 1935. No. 29581.

*Tibbets, Canaday & Hewitt,* for appellant.

*James D. Conway* and *W. M. Whelan, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

This is an action under the workmen's compensation law. From an award by the compensation commissioner, appeal was taken to the district court, which approved said award. From the judgment of the district court, it was brought to this court on appeal by the defendant.

The appellee, Arthur Albers, 39 years of age, had been caretaker of the Kipp Building in Hastings, Nebraska, for more than two years at the time of the accident. He washed windows and cleaned the rooms and offices in this three-story building, and, in addition, repaired locks and windows, built partitions, took care of some of the plumbing repairs, and did the painting that was necessary, and collected the rents. He devoted all of his time to working for John Kipp, the owner of the building, for in his spare time he had built corncribs and hog houses for a farm belonging to the owner of the building.

The Democrat Printing Company occupied the basement floor with its workshop, and had its offices on the first floor. Other tenants in the building were Fred Moe, Dr. Schaufelberger, Dr. Brown, Attorney C. E. Bruckman, and several others. The building was constructed of brick.

The appellee, of his own volition, made several window shields out of boards to keep the dust out of the rooms. The accident occurred when he was sawing a board to make one of these window shields for Dr. Schaufelberger's room, and to saw it more quickly he had gone into the rear room of the Democrat Printing Company and used a power-saw which was owned by the Democrat Printing Company, and installed for cutting metal. Appellee's hand slipped, and his thumb was cut completely off. He was taken to the hospital, where the wound was dressed, after which he continued to work at the building until the following June, at his regular wages of $14 a week.

The printing company took care of its own janitor work

in the workroom in the basement, where the power-saw was located, and the appellee had no duties calling him there except at occasional intervals when he washed the windows in that room.

The appellant testified that he would be around the building about twice a week to discuss the work with the janitor; that he did not know that window shields were being made, and would not have had them if he had known it, for they were made of rough boards that he would not have in a pig house. He testified that he furnished any tools requested, and that there were two hand-saws there for the janitor to use; that appellant never knew there was a power-saw in the workroom of his tenant, or that his janitor used it.

William Maltman, publisher of the Hastings Democrat, testified that his power-saw was in the pressroom, and that the janitor had no occasion to be in that room except to wash windows, and that the janitor had never asked his permission to use this saw, and that signs on the doors of the pressroom read, "For employees only."

The appellee, on the other hand, testified that he showed one of these window shields in a toilet to the appellant, and he thought it was a good thing. He further claimed that the foreman of the printing company never objected to his using this power-saw.

The appellant sets out as errors that the court erred in holding that the injury arose in the course of the appellee's employment, and further erred in refusing to reduce the amount of the appellee's award by deducting therefrom a set-off alleged by the appellant.

Section 48-101, Comp. St. 1929, provides: "When personal injury is caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawful imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer, provided the employee was himself not wilfully negligent at the time of receiving such injury."

It is admitted that, if an injury arises out of employment which occurs while the employee is engaged in performing

some labor and in performing it in a manner that could reasonably be foreseen when the employment contract was made, recovery may be had.

But, on the other hand, if the injury results from doing some act, even for the employer's benefit, not within the contemplation of the parties to the employment contract, or in doing an act at a place and in a manner not contemplated in the employment contract, it does not arise out of the employment within the contemplation of the workmen's compensation law.

The appellee was engaged on his own initiative in making a window shield out of a rough board, without the knowledge of his employer, and without being requested to make same by the tenant. And, further, he could have cut out the shield with one of the saws furnished by his employer, although it might have taken more time to do it. Further, the appellee was in a place where his duties did not call him, and was using a dangerous instrument, without permission of its owner, and, in addition, was using such power-saw, designed only to cut lead and other metals, for the purpose of cutting a rough board. Such use of such dangerous appliance, in such a place, at a time when no duty required his presence there, was outside of and beyond the scope of his employment, and for an injury occurring at such time and place the employer is not liable.

"Where an appliance is used for a purpose for which it was not intended, there can be no recovery unless it is shown that it was so used with the acquiescence or at least with the knowledge of the employer." 39 C. J. 848.

Where a watchman fell into a chute while asleep and was killed, it was held that his injury was not received as a natural incident of his work. It is said he was injured by performing an act not induced by his employer nor authorized by him. *Matter of Gifford v. Patterson, Inc.*, 222 N. Y. 4, 117 N. E. 946. See *United Disposal & Recovery Co. v. Industrial Commission*, 291 Ill. 480, 126 N. E. 183.

It has been held in many English cases that, under the doctrine of *volenti non fit injuria*, a workman voluntarily

absolves his master from the old common-law duty to carry on his business with such appliances as not to expose his employee to unreasonable risk, when that workman, without the knowledge of the master, uses machinery or tools more dangerous than that furnished by the master, and without the master's consent.

"Where the proximate cause of the injury is the adoption by the servant of a dangerous method of work where a safe method has been provided by the master, there can be no recovery for the resulting injury." 39 C. J. 844.

"If a servant knows or is charged with knowledge of the fact that appliances have been furnished for his use by an employer, it is the duty of the servant to use such appliances for prosecution of his work, and where proper appliances have been furnished him and he is injured by reason of his failure to use them, he cannot recover." 39 C. J. 845.

The rule applies although the use of the tool furnished may be inconvenient, and although the employee is afraid he may not be able to get out enough work to satisfy his employer if he uses same.

"Where a workman, employed to do work by hand, tried to rig up a time-saving device by throwing a rope over a revolving shaft, and was injured in so doing, it was held that the accident did not arise out of and in the course of the employment." 1 Schneider, Workmen's Compensation Law (2d ed.) 937.

While not exactly in point, yet a large number of Nebraska cases on compensation were reviewed in *McNaught v. Standard Oil Co.*, 128 Neb. 517, 259 N. W. 517, in which it was held that, if the employee left the place where his duties were to be performed to engage in a personal objective not incidental to his employment, in the doing of which he was injured, then his accident did not arise out of and in the course of his employment.

A portion of section 48-152, Comp. St. 1929, defining the meaning of the clause, "Personal injuries arising out of and in the course of employment," reads: "It is hereby declared: Not to cover workmen except while engaged in,

on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury." The appellee was injured while in a place where he should not have been at the time of the accident.

Under the clear terms of the statute, as interpreted by many decisions of this and other courts, the judgment for the appellee is

REVERSED.