NEIL McNAUGHT, APPELLANT, V. STANDARD OIL COMPANY, APPELLEE.

FILED MARCH 12, 1935. No. 29452.

*Mayer & Mayer*, for appellant.

*W. H. Herdman, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

This is a compensation case. The plaintiff was employed with his truck to sell and deliver gasoline and other petroleum products in a definite territory surrounding Polk. The compensation commissioner made an award, but, upon appeal to the district court, compensation was denied for that the injuries sustained by the plaintiff were not caused by an accident arising out of and in the course of his employment by defendant. This is the only question presented here. If the plaintiff's injury was caused by an accident arising out of and in the course of his employment, it is agreed by the parties that the award of the compensation commissioner is proper.

On January 13, 1934, the plaintiff left Polk with his truck loaded with gasoline and other petroleum products with the intention of making several deliveries. When he found his first customer away from home, he drove to

Stromsburg for the purpose of making a payment of·an instalment on the purchase price of his truck. Stromsburg is about four miles outside of the territory in which plaintiff was authorized to sell and deliver merchandise. After making the payment on his truck, the plaintiff drove back toward the home of another customer to make a delivery and, when within about one and one-half miles from the line that marked the limit of his territory, the accident occurred. The defendant contends that the trip to Stromsburg was a deviation from his duty and that an injury caused by an accident on this trip was not one arising out of and in the course of his employment.

"Workmen's compensation law provides compensation for such injuries only as arise out of and in the course of workmen's employment." *Pappas v. Yant Construction Co.*, 121 Neb. 766. See *Bergantzel v. Union Transfer Co.*, 124 Neb. 200; *Siedlik v. Swift & Co.*, 122 Neb. 99; *Feda v. Cudahy Packing Co.*, 102 Neb. 110. Pappas was engaged in the repair of his truck which he used in the employment, at home, on a day he was not working. He was injured, and this court denied compensation. Bergantzel and Siedlik were injured on their way to the premises of the employer before starting upon the day's work. Feda was injured during working. hours, but while engaged in playing and scuffling with another employee in a dangerous position around the elevator.

The plaintiff was employed upon the day of the accident when he loaded his truck with merchandise and started to make deliveries. But the employer challenges his status, from the time he left the territory in which he was authorized to work, on the trip to Stromsburg. On the other hand, the employee insists that the trip to Stromsburg to pay an instalment of the purchase price of the truck was an incident of his employment. In *Tragas v. Cudahy Packing Co.*, 110 Neb. 329, the employee was injured during the noon hour on the employer's premises grinding a chisel which he used in his work. This was held to be incidental to his employment. In *Speas v. Boone County,*

119 Neb. 58, the employee furnished his own team for work on a public road. Ordinarily, he fed the team on the road, but on the day of the accident his work was near his home, and he put them in the barn to feed them. During the noon hour, while caring for the horses, one of them kicked him, injuring him. Under the facts and circumstances of that case, caring for the team during the noon hour was held to be incidental to his employment.

However, another provision of the workmen's compensation act defines its terms. Section 48-152, Comp. St. 1929, says: " 'Personal injuries arising out of and in the course of employment,' it is hereby declared: *Not* to cover workmen except while engaged in, on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service as such workmen." The plaintiff in this case, at the time of the accident, was not engaged in, on or about the premises where his duties were being performed, or where his service required his presence as a part of such service, unless the payment on the truck was a duty incidental to his employment. The plaintiff furnished the truck, but the tank and rack were the property of the defendant. It was necessary for the payments to be made on the truck for the plaintiff to continue his employment. The same was true in *Pappas v. Yant Construction Co.*, 121 Neb. 766. It was as necessary that Pappas' truck be repaired as that McNaught's truck have an instalment on the purchase price paid. There is no suggestion in the record that the employer here was interested in the matter. Where an employee leaves the place where his duties are to be performed or where his service requires his presence to engage in a personal objective, not incidental to his employment, the relation of employer and employee does not exist until he returns to a place where by the terms of his employment he is required to perform service.

At the time of the accident, the plaintiff was returning from Stromsburg and was one and one-half miles east of

the territory in which he was authorized to work. He relies upon *Keebler v. Harris*, 120 Neb. 739, to sustain his contention that, even if the trip to Stromsburg was not incidental to his employment, at the time of the accident, his private purpose had been fulfilled, and he was on his way back to the place where his employment required him to be. In the *Keebler* case, Harris, an employee of the American Credit Corporation, drove his employer's car into a collision with plaintiff. Harris had general authority to collect delinquent payments and to repossess cars. He repossessed a car and drove it to make a collection, then deviated from his course for personal pleasure. At the time of the accident, he was on his way back to the garage where it was his duty to deliver the car. He was not on a direct route from his last duty in his employment to the garage. It was there said: "He kept within the zone of his general duties. If he deviated from the direct route and temporarily abandoned his employment for his own pleasure, the evidence tends to prove that he resumed those duties when he started to the storage garage and that the accident occurred on the way." At the time of the accident, Harris was doing the specific thing he was ordered to do.

This plaintiff was not within the zone of his general duties. Anyhow, the *Keebler* case was a common-law action, brought by a third party, and not a compensation case. To recover under the workmen's compensation law, one must be within its provisions. The plaintiff was not within its terms.

AFFIRMED.

PAINE, J., dissenting.

It may be admitted that this case is very close to the line. The majority of the members of the court hold that the Standard Oil Company is not responsible under the workmen's compensation law for the injury to Neil McNaught, its employee. In my opinion the compensation commissioner was right in finding that, under the facts

and the law, the said company should pay the hospital bills and weekly award for the injury caused its employee when his truck upset. McNaught was required by his contract of employment to furnish a truck, but the company furnished the tank and the racks upon this truck. McNaught earned about $75 a month. The truck was filled with company gas, oil, and other products before he started out on his regular trip, but, finding that a customer was away from home, he drove the truck some four miles to Stromsburg to make his regular payment due on the purchase price of the truck. As soon as the payment was made he started directly back to see another customer, and when within a mile and a half of his territory his truck upset, and he was badly injured.

In *Struve v. City of Fremont,* 125 Neb. 463, being a workmen's compensation case, it was held that, when a city fire chief, who used his own car, the city paying for the gas and oil therefor, while working on such car early in the morning, preparing to drive down to the fire station, was a victim of monoxide gas poisoning in his own garage, the city was responsible for his death, under the theory that his death occurred within the scope and course of his employment.

In *Geraty v. National Ice Co.,* 16 App. Div. (N. Y.) 174, a cake of ice fell out of an ice-wagon and injured a passer-by while a driver had temporarily driven on a side street on his own business. It was held generally that, if a servant makes a deviation from his route for his own purposes, and the master's liability has been suspended while the servant has deviated from the route, such liability again attaches after he has resumed the prosecution of his master's business.

In *Riley v. Standard Oil Co.,* 231 N. Y. 301, 22 A. L. R. 1382, a truck driver was sent to a freight yard for goods. After obtaining them he went four blocks in the opposite direction upon an errand of his own. Having accomplished his errand, he started to return to the freight yard, but before he had reached the point where he had deviated

from his master's business he injured a child. Judge Andrews, in an opinion concurred in by Judge Cardozo, held that he was driving toward his master's mill with the truck loaded with the master's goods, his only purpose being to deliver such goods as his master had commanded, with no independent object of his own in his mind, and it was held that the relation of master and servant existed. Each of these statements applies as well to the case at bar.

Our court has already held that it is not necessary for one to have reached the zone of his employment, or the territory in which he was employed to work. It was so held in *Keebler v. Harris,* 120 Neb. 739, where a young man's duty was to repossess an automobile and return it to his employer's garage, but he deviated 25 blocks on a side trip for his own pleasure; then, when he started back to the garage with the car, he had a collision, and it was held that he was then engaged in his master's business, even though he was not yet as close to the garage as he was when he deviated on his personal errand; Judge Rose rightly holding that he resumed his master's business when he started to return.

In the case of *Speas v. Boone County,* 119 Neb. 58, a workmen's compensation case, Speas was engaged in dragging roads for Boone county, for which he was paid $7.50 a day when he furnished four horses. On the day of the accident he was dragging the road along by his own farm, and at 11:30 a. m., having reached the driveway into his own farmyard, he turned in, unhitched, and the four horses entered the barn, and in going in to tie them, one of these four horses, which had theretofore been gentle, kicked him. In this opinion Chief Justice Goss said: "Speas was paid by the county for the use of the team. It was the duty of Speas to feed the team. It was implied in his contract of employment that he would feed them at noon. It was as important to feed them in preparation for the afternoon's work as it was necessary for Tragas to have a sharp chisel for the purpose of cleaning out the pans on which he was working during regular

working hours. Tragas could have sharpened the chisel during the hours for which he was paid instead of taking a portion of his hour for rest or refreshment thus to further his employer's business. Speas could not both feed the team and eat his own lunch while the team was working." The case referred to is *Tragas v. Cudahy Packing Co.*, 110 Neb. 329, in which an injury was sustained while grinding a chisel during the noon hour to use when he again went back on duty.

In *Perry v. Johnson Fruit Co.*, 123 Neb. 558, a traveling man furnished his own car, and while taping up a leaking gasoline line and filling the vacuum tank, early in the morning at his own home, preparatory to making a trip for his employer, he was fatally burned. It was held that, under the principles announced in *Speas v. Boone County, supra,* his dependent was entitled to compensation. This repair work was no more the master's business than was McNaught's trip to make the payment due on his truck.

The statement in this second syllabus, that the relation of employer and employee does not exist until he returns to the place where by the terms of his employment he is required to perform service, is clearly against the holding of this court in *Keebler v. Harris, supra,* where he had only just started back from his pleasure trip, and was not as close to his point of deviation as McNaught was in the instant case.

An abundance of cases support the doctrine that, when the employee is on his way back from a private errand to carry out instructions given by his employer, the former relationship is restored. *Gibson v. Dupree,* 26 Colo. App. 324; *McKiernan v. Lehmaier,* 85 Conn. 111; *Ritchie v. Waller,* 63 Conn. 155, 27 L. R. A. 161, 38 Am. St. Rep. 361; *Leilich v. Chevrolet Motor Co.,* 328 Mo. 112; Ann. 22 A. L. R. 1409; 26 Cyc. 1536.

In the second paragraph of the syllabus in the case at bar, it is held that making a payment on the purchase price of the truck which his contract of employment required him to furnish was not incidental to his employment. I

524

insist that it was, for if a man, in doing a road-dragging job (*Speas v. Boone County, supra,*) which requires the use of four horses, can be allowed workmen's compensation when he is kicked by one of those horses in his own barn, on the theory that it is incidental to his employment to feed the horses or else they cannot work after dinner, it forms a clear precedent for McNaught in the instant case, who must furnish a truck, and is injured one and a half miles out of his territory while making a payment which is required to be made to keep possession of the truck, which he is required to use in his master's business; the cases are without distinction, and to be consistent, and follow its own precedent, this court should allow McNaught compensation.