CLARE D. FINTZEL, Claimant, Appellee, v. STODDARD TRACTOR & EQUIPMENT COMPANY, Employer, Appellant; HARDWARE MUTUAL CASUALTY COMPANY, Insurance Carrier, Appellant.

No. 42856.

MAY 14, 1935.

Stewart & Hatfield, for appellants Stoddard Tractor & Equipment Company and Hardware Mutual Casualty Company.

Henderson, Hatfield & Wadden, for appellee Clare D. Fintzel.

POWERS, J.—The plaintiff instituted appropriate proceedings before the industrial commissioner to obtain compensation for personal injuries under the Workmen's Compensation Act. The commissioner reversed an arbitration decision and allowed compensation. The employer and insurance carrier appealed to the district court of Woodbury county, Iowa, which sustained the commissioner and entered judgment for plaintiff accordingly. From that judgment the employer and the insurance carrier have appealed to this court.

There is but one question involved, and that is, whether the evidence sustains the finding of the industrial commissioner that the plaintiff's claim is for "injuries sustained arising out of and in the course of the employment." Section 1377, Code, 1931.

It is conceded that the finding of the industrial commissioner must be sustained if there is evidence to support it. Section 1453, Code 1931.

"The courts may not interfere with the findings of fact, made by the industrial commissioner, when these are supported by evidence, even though it may be thought there be error." Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916.

■ Plaintiff was a salesman for the Stoddard Tractor & Equipment Company of Sioux City, a corporation, of which a Mr. Stoddard was the president and managing officer. He had no definite working hours. His business was to sell merchandise for his employer. He worked Sundays and nights, and whenever he could promote sales of his employer's product. His employment was of the type which may be described as continuous. Walker v. Speeder Machinery Corporation, 213 Iowa 1134, 240 N. W. 725. He was free to adopt whatever method seemed best calculated to promote sales. His employer sent him to Pender, Nebraska, some twenty-five miles west of Sioux City, on Friday, October 20, 1933, to submit to the county board of commissioners of Thurston county an offer to sell a carload of corrugated steel culverts in response to an advertised public letting of a contract by the county commissioners for such materials. It appears that Mr. Stoddard, the employer, ordinarily took care of this territory personally, but on that day he had to be in Ames or Des Moines. The plaintiff went to Pender and submitted the low bid for the furnishing of the materials. The contract, however, was not let, nor was the bid rejected. No action was taken. The reason appears to be that the board of commissioners, or at least the president of the board of commissioners, a Mr. Ralph Norris, felt that the low bid might be too high, and that further time should be taken for consideration and perhaps investigation. The matter seems to have been left with Ralph Norris, the chairman of the board, for decision. The plaintiff talked to Mr. Norris in an effort to close the deal and get the contract on that day before leaving Pender. Mr. Norris then suggested to him that he and Stoddard come out to Mr. Norris' farm on the following Sunday, that the pheasant season opened on that day, and they could shoot some pheasants and talk over the contract.

When the plaintiff returned to Sioux City on Friday night, he communicated the situation to Mr. Stoddard, his employer, who was a personal friend and long-time acquaintance of Ralph Norris. Mr. Stoddard immediately planned to go to the Ralph Norris farm on Sunday in response to this invitation; but since the plaintiff had submitted the bid and was familiar with the figures, and Mr. Stod-

dard was not familiar with them, Mr. Stoddard suggested that the plaintiff, his salesman, go along, as he would be in better position to talk about the contract. At the suggestion of the employer, therefore, the plaintiff left with his employer from Sioux City early Sunday morning to go to the Ralph Norris farm near Pender. They left early in the morning because it was believed that the pheasant hunting would be better in the early part of the day. When they arrived at the Ralph Norris home, Mr. Norris came out of the house and told them that he was feeding a large number of cattle, that his hired man had been celebrating Saturday night and had not come home, that it would be necessary, therefore, for him to do all the chores and feed the cattle, and that he would not be able to do any hunting for awhile. He told them, also, that he had known the night before that he would not be able to hunt in the morning, and had arranged with his son, Harold Norris, to take them out in the fields pheasant hunting. He directed Stoddard and the plaintiff to go to his son's home, about a quarter of a mile distant from where Ralph Norris lived, and told them he would join them later. This they did, and after hunting for an hour and a half or two hours, and obtaining some five or six pheasants, they prepared to return to the Ralph Norris house when the gun of Harold Norris was accidentally discharged and the plaintiff severely injured in the leg.

The appellant concedes that the trip to the Ralph Norris home was in the course of plaintiff's employment, but contends that the trip from the Ralph Norris home over to the home of his son for the purpose of hunting pheasants was a side trip, a deviation, a temporary abandonment of the employer's business, and that it was, therefore, outside the course of plaintiff's employment. The appellee, on the other hand, contends that such trip from the home of Ralph Norris to hunt pheasants with the son of Ralph Norris was within the scope of his employment, and that he was pursuing his employment at the time of the injury; that in doing what he did, he was pursuing a proper means for the attainment of his ultimate object of obtaining a contract for the sale of his product.

Both parties seem to assume that the injury arose out of the employment, if it occurred in the course of the employment. The issue narrows down, therefore, to the question as to whether the injury occurred in the course of the employment.

There can be no question, under this record, that the plaintiff's purpose in going to Pender, Nebraska, on that Sunday to the home

of Ralph Norris, in company with his employer and at the request of his employer, was to get this contract for steel culverts. Did he abandon the pursuit of that contract when he went to the Harold Norris place, under the circumstances in this case, or did that contract still remain an object of his hunt?

Particular sales of highly competitive articles probably result more from the skill of the salesman than the merit of the product. Such articles are usually so near alike as to quality and price, that the personality of the salesman may be the deciding factor. Successful salesmanship requires proficiency in many arts. A successful salesman must be a good listener as well as a good talker. He must be able to accept as well as give. He must be a grateful guest as well as a generous host. The plaintiff was not much of a hunter. He did not even own a gun. When he and his employer arrived at the home of their prospective customer, they found that the prospective customer had gone to some trouble to make arrangements for their entertainment while he was doing his chores and feeding his cattle. What, then, was the plaintiff's duty to his employer? What course on his part would be best calculated to accomplish his purpose of obtaining the order for the culverts? Appellant says that he should have stayed there on the Ralph Norris farm and continued to argue with Ralph Norris about the contract while Norris was trying to do his chores and feed his cattle. He concedes that had he done that he would have remained within the course of his employment. It is conceivable, however, that such a course would not have been the better course to pursue, even though he had no other purpose in mind than to get that contract. To have declined the entertainment offered, or even to appear to have accepted it unwillingly, might have jeopardized his getting the contract, which was the object of his visit. That the customer is always right is a rule which experience has demonstrated to be a cardinal principle of salesmanship. It is a rule without important limitations as to subject. The successful salesman does not start to make a sale by getting into an argument with his prospective customer on any subject. He disagrees with his customer as little as possible. A salesman, in a situation of this kind at the Ralph Norris home for the purpose of closing a contract, might not begin by rejecting entertainment which his prospective customer had generously arranged for him. He was there seeking the friendship, the good will, the cooperation of Ralph Norris. In accepting the entertain-

ment he was practicing the maxim that a student of human nature put into words when he said that one way to win a person's friendship is to permit that person to do some favor for you. The course of his employment, the duties which he had to perform, the purpose which he hoped to achieve, may properly have united with the direction of his employer, who was with him, and required that he enthusiastically and gratefully avail himself of this form of entertainment which the customer had so generously proffered. His doing so cannot be said to be an improper step, under the circumstances, in obtaining the order which was the object of his mission. That this was the real purpose of the plaintiff, not only in going to the Ralph Norris farm, but also, in doing all that he did after he got there at the suggestion of his prospective customer, is indicated by his own testimony, and is supported, also, by inferences from circumstances and undisputed facts in the case. His first remark when Ralph Norris came to the hospital to see him immediately after the accident was, "Well, Ralph, how about the culvert order, do I get it?" That remark is consistent with his conduct during the entire day. It shows the thought uppermost in his mind. The other things which he did, including the trip to the Harold Norris farm to hunt pheasants in accordance with a plan which had been arranged for his entertainment by the man who had the power to give or withhold the order, were incidental and tributary to that purpose, and he was pursuing his master's business when he engaged in them. At least, the industrial commissioner so found, and it cannot be said that such finding is without support in the evidence.

The conclusion we have reached is not out of harmony with the cases heretofore decided by this and other courts on this subject. Obviously, in a situation of this kind, each case must be determined on its own peculiar facts. Precedents are, therefore, of value only as general guides. As tending to support the proposition that scope of employment may be as extensive as indicated herein, reference is made to the following cases: Griffith v. Cole Bros., 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F, 923; Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916; Bushing v. Iowa Ry. & Light Co., 208 Iowa 1010, 226 N. W. 719; Kyle v. Greene High School, 208 Iowa 1037, 226 N. W. 71; Walker v. Speeder Machinery Corporation, 213 Iowa 1134, 240 N. W. 725; Sawtell v. Stern Bros. & Co., 226 Mo. App. 485, 44 S. W. (2d) 264.

The case of Sawtell v. Stern Bros. & Co., supra, is somewhat similar in its facts to the case at bar. In that case a salesman was at the home of a prospective customer engaged in an effort to make a sale. It developed that the customer's wife, who was not at home, had an interest in the funds to be invested, and he suggested that negotiations be suspended until she returned. He estimated that she would be home within an hour or two, and asked that the sales-man return at that time to continue the negotiations. During the interval, the salesman went to visit a sister in that neighborhood. While on that trip he was injured by being struck by an automobile. The court held he was in the course of employment at the time; that to remain in the course of his employment he was not required to impose his presence continuously in the house of his prospective customer, or to sit on the doorstep awaiting the return of his customer; that he was confronted with a necessary interval of sus-pended personal contact, and if he adopted a reasonably prudent course to reestablish contact, his employment was not abandoned.

The case at bar is a much stronger case of continuance of the employment. The salesman here was confronted with a period of suspended personal contact (while Ralph Norris was doing his chores and feeding his cattle). The means he adopted to reestablish contact were such as might properly be found to be reasonable, but more than that, they were the very means which the prospective customer had arranged. Furthermore, their acceptance cannot be said, as a matter of law, to be an inappropriate means of promoting friendship and good will between the salesman and his prospective customer as an aid in ultimately making the sale, as we have en-deavored to point out in this opinion. Moreover, in the Sawtell case, the court found that no other conclusion was possible under the evidence, and reversed the industrial commissioner, whereas, in the case at bar, the industrial commissioner found the injury occurred in the course of the employment, and we only determine that there is sufficient evidence to support such finding.

The judgment of the trial court sustaining the industrial com-missioner is correct, and it is, therefore, affirmed.

ANDERSON, C. J., and KINTZINGER, MITCHELL, PARSONS, RICH-ARDS, and HAMILTON, JJ., concur.