29774. MACON DAIRIES INC. *v.* DUHART *et al.*

DECIDED MARCH 12, 1943.

*Edward F. Taylor,* for plaintiff in error.
*Thomas A. Jacobs Jr.,* contra.

BROYLES, C. J. Ruel Duhart and Annie May Duhart filed with the Industrial Board a claim for compensation against Macon Dairies Inc., for the death of their sixteen-year-old son, Frederick Duhart. The director adjudged that the defendant pay the claimants $2.97½ weekly for a period of three hundred weeks from the date of the accident, $100 as funeral expenses, and $50 attorney's fee. The board sustained the finding of the director, except as to the allowance of attorney's fee, and on appeal the judge of the superior court affirmed that judgment. Counsel for Macon Dairies Inc. excepted to the judgment rendered by the judge of the superior court, and makes the following contentions in his brief: " (1) The deceased . . was not an employee of Macon Dairies Inc.

(2) The accident did not arise out of and in the course of the employment. There was a deviation from the business. (3) The employee was not contributing $3.50 per week to the claimants, but only $2.50 per week, by the uncontradicted evidence in the case, and therefore the rate of compensation is too high." (4) The employer did not have ten employees regularly in its employment, and did not come under the compensation act.

Frederick Duhart was killed while riding on one of the defendant's trucks driven by J. E. Brantley, when the truck collided with an automobile. The defendant was engaged in the business of selling milk, and owned four trucks in which milk was delivered daily to its customers in the City of Macon. These trucks were kept at the defendant's plant, and each truck had a driver who came to the plant early every morning to get the milk and deliver it to customers on whatever route the defendant instructed him to cover. The defendant furnished gasoline and oil for the trucks, and checked the gasoline consumption of each truck "to tell just how" the driver of the truck was "running his route." The defendant employed J. E. Brantley to drive one of these trucks, and paid him ten per cent. of the money collected by him for cash sales and on credit sales made to such customers as the defendant instructed him to credit. Brantley turned in to the defendant each night the proceeds of the milk sales for that day, and was paid his commissions at the end of each week. Brantley "signed for" the milk each morning that was loaded on his truck. Brantley was responsible for any sales made by him on credit, unless the defendant authorized him to make such sales. He reported to the defendant's plant at 2:30 o'clock each morning for work. The truck-drivers were required to have their trucks back at the plant each night at eight o'clock. It was customary for the drivers of the trucks to carry with them boys to deliver the milk, and Brantley had two negro boys on his truck to make deliveries of the milk. One of those boys was Frederick Duhart, the deceased. The defendant never directed Brantley to hire the deceased, but its officers knew that he had done so, and acquiesced in his employment. It took some time to calculate at the end of each week what the defendant owed Brantley, and sometimes the defendant would advance the boy's weekly wage of $4, and charge Brantley with the amount so advanced. On one occasion at least, and perhaps at other times, the defendant's presi-

dent, R. M. Holloway, made out the company's check directly to the deceased for his week's wage. The defendant "paid social security on him [Brantley]." J. J. Holloway, the defendant's secretary and treasurer, testified: "These fellows [the truck drivers] work pretty hard and long hours on the milk route. You get out and run a milk route twelve hours a day for seven days a week, you get sorter stale and need help." He also testified that if a driver lost any milk while he himself was delivering milk to customers, he would be held responsible for the lost milk.

Annie May Duhart testified, that the deceased lived with her and her husband, and turned over to her each week for the support of the family $3.50 of the $4 earned by him; that the $3.50 was used for the support of the family; and that she earned nothing, and her husband had high blood pressure and earned very little, working at occasional odd jobs. It was undisputed that the money contributed by the deceased was necessary for the support of the family, and that it was so used. She further testified, in substance, that Mr. Brantley told the deceased to report for work at the defendant's plant at two o'clock in the morning; that sometimes the boy was late; that she spoke to Mr. R. Holloway, the president of the defendant company, about getting the boy a bicycle in order that he might get to work on time; and that Mr. Holloway said: "Charlie [the deceased] is all right, but he is late some mornings," and approved of her getting her son a bicycle to ride to his work. Eddie Ross, the other boy who worked on the truck with the deceased, swore that Mr. Holloway talked to him about his work and asked him how he liked it; that witness and the deceased arrived at the plant very early in the morning and loaded the milk on the truck; and that "they would check the trucks every morning." Brantley testified, that he often drove his truck off of his milk route three or four blocks to get something to eat for himself and the deceased; and that on the occasion in question he had gone to his regular eating place and got a sandwich and ate it, and was going directly back to his milk route to deliver milk to a regular customer when some one driving a stolen automobile collided with his truck at a street intersection, and killed Frederick Duhart at a place one block from the customer's house. The deceased's parents had another boy nineteen years old who contributed little or nothing to the support of the family. Brantley testified, that he

had to make his milk deliveries at a certain time, and that if he did not do so the defendant would discharge him; and that having the boys to deliver the milk enabled him to "cover more territory in a shorter length of time." Ruel Duhart testified, that his son, the deceased, gave $3.50 of his entire wage of $4 per week for the support of the family; that this money was not kept separate from other money that he had; and that he (the witness) paid $1 a week on the purchase-price of the bicycle purchased for the deceased, without knowing how much of the money earned by the boy went on the payments for the wheel.

A finding was authorized, from the evidence, that at the time of the homicide the defendant had regularly in its employment nine employees, exclusive of the boys working on the trucks and delivering milk.

We can not agree to the contention of counsel for the plaintiff in error, that no compensation should have been allowed in this case because Brantley was an independent contractor and not an employee of Macon Dairies Inc., and the deceased was Brantley's employee, and not the employee of the defendant corporation. "In claims for compensation under the workmen's compensation act, where the question is whether the injured person, or the person under whom he was working, occupied the relation of an employee or of an independent contractor toward the alleged employer, the line of demarcation is often so close that each case must be determined upon its own particular facts. The chief test to be applied, however, in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Liberty Lumber Co.* v. *Silas,* 49 *Ga. App.* 262 (2) (175 S. E. 265), and cit. "Findings of fact made by the Department of Industrial Relations within its powers are, in the absence of fraud, conclusive, provided there is any supporting evidence. With respect to the sufficiency of the evidence to sustain an award by that department, the award stands in this court upon the same footing as the verdict of a jury approved by a trial judge in other cases." *Liberty Lumber Co.* v. *Silas,* supra.

While we have not undertaken to set out all the evidence in the case, we are satisfied that we have stated enough of it to support our conclusion that Brantley was an employee of the Macon Dairies Inc., and was not an independent contractor. In this connection see *Lokey* v. *Hightower*, 57 *Ga. App.* 577 (196 S. E. 210); *American Mutual Liability Insurance Co.* v. *Harris*, 61 *Ga. App.* 319 (6 S. E. 2d, 168), and cit.; *Minchew* v. *Huston*, 66 *Ga. App.* 856 (19 S. E. 2d, 422).

We are further of the opinion that the evidence warrants the conclusion that the deceased was an employee of Macon Dairies Inc., within the meaning of the workmen's compensation act. Its officers acquiesced in the boy's employment by Brantley, and sometimes advanced Brantley the money to pay for the boy's services; and on one occasion at least the company issued its check directly to the deceased in payment of his wage. Indeed, it is inferable from the evidence that the boy's help was essential to the expeditious and proper performance of the duties Brantley owed to the defendant. See, in this connection, *Hockmuth* v. *Perkins*, 55 *Ga. App.* 649 (191 S. E. 156), and cit.; *Swift & Co.* v. *Alston*, 48 *Ga. App.* 649 (173 S. E. 741); *American Mutual Liability Insurance Co.* v. *Harris*, supra. The *Hockmuth* decision, supra, cited with approval Michaux *v.* Gate City Orange Crush Bottling Co., 205 N. C. 786 (172 S. E. 406), which presented a state of facts very similar to those involved in the instant case, the first headnote being as follows: "A boy employed by a truck-driver for a bottling company with the knowledge and consent of the company, whose services are necessary to the proper distribution of the products of the company, is an employee of the company within the meaning of the workmen's compensation act." Applying the law to the facts of the case sub judice, we are satisfied that the deceased was an employee of Macon Dairies Inc., and that the hearing director did not err in finding as a matter of fact that he was such an employee.

The next contention of counsel for the plaintiff in error is that "there was a deviation from the business" of the employer and "the accident did not arise out of and in the course of the employment." "An injury arises 'in the course of employment,' within the meaning of the workmen's compensation act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he

is fulfilling those duties or engaged in doing something incidental thereto. . . An accident arises 'out of' the employment when it arises because of it, as when the employment is a contributing proximate cause." In *New Amsterdam Casualty Co.* v. *Sumrell, 30 Ga. App.* 682 (2), 684 (118 S. E. 786), this court quoted with approval the following language in *Brown* v. *Smith,* 86 *Ga.* 274, 277 (12 S. E. 411, 22 Am. St. R. 456) : "The real test by which to determine whether a person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted *he was subject* to such person's orders and control, and *was liable* to be discharged by him for disobedience of orders or misconduct." In the *Sumrell* case this court said : "If the contract reserve to the proprietor the power of appointment and dismissal, and control of the details of the work to be performed, the proprietor becomes an employer and the other an employee." The working hours of Brantley and the deceased were long, and their diversion from the milk route was slight; and it is inferable from the evidence that it was necessary for them to get breakfast in order to perform their duties to the best advantage. In this connection see *Limerick* v. *Roberts,* 32 *Ga. App.* 755 (124 S. E. 806). But, in any event, the accident occurred after Brantley had bought and finished eating his breakfast, and while he was going directly to deliver milk to a customer whose house was only a block away from the place of the homicide. (It will be recalled that while it was Brantley's custom to get breakfast for himself and the deceased at the restaurant he was patronizing, he forgot to get anything for the deceased to eat on that particular occasion.) We are satisfied that even though Brantley had slightly deviated from his regular route, he had, at the time of the accident, practically resumed his work and was acting within the scope of his employment. The following decisions support this view : *Atlanta Furniture Co.* v. *Walker,* 51 *Ga. App.* 781 (181 S. E. 498) ; *Wicker* v. *Fidelity & Casualty Co.,* 59 *Ga. App.* 521 (1 S. E. 2d, 464), and cit. It follows that the director was authorized to find that the accident arose out of and in the course of the deceased's employment.

Counsel for plaintiff in error contends that the uncontradicted evidence shows that the deceased contributed only $2.50 to the support of his parents, and therefore that the award based on a contribution of $3.50 was too large. This contention is grounded on

the fact that the claimants paid out of their general fund $1 a week on the purchase-price of the bicycle purchased by them to enable their boy to get to his work promptly. There is evidence that the employee contributed $3.50 to the support of the claimants each week; that such contribution was necessary for the support of the family of which the minor employee was a member; and that it was used for the support of the family. The bicycle was not purchased for the deceased until his parents and the defendant's president had decided that it was necessary for the boy to have a bicycle in order to get to his work on time. In *Maryland Casualty Co.* v. *Bess,* 33 *Ga. App.* 798, 801 (127 S. E. 828), this language occurs: "The fact that the decedent himself was supported out of the common fund does not alter the case. He was a minor and was entitled to be maintained at the parental domicile from the father's resources, and the father was not less dependent because a part of the funds coming in for his administration went to the support of the decedent as his minor child, among the others of his household." This court there quoted with approval the following statement from In re Peters, 65 Ind. App. 174 (5, 6) (116 N. E. 848) : "The cost of the maintenance of a minor son, who contributed to the support of his father's family, so that the father was his partial dependent, should not be considered in determining the amount of compensation to which the dependent father is entitled under the workmen's compensation act for the son's death." In principle, the rule just quoted settles adversely to the plaintiff in error its contention that the $1 paid weekly on the bicycle should have been deducted from the $3.50 contributed weekly to the claimants by their minor son. See also *Glens Falls Indemnity Co.* v. *Jordan,* 56 *Ga. App.* 449 (193 S. E. 96), and cit.

Under the evidence the hearing director was authorized to find that the employer, at the time of the homicide in question, had regularly in its service at least ten employees engaged in the same business; and there is no merit in the contention that the Industrial Board was without jurisdiction of the case. The judge did not err in affirming the award by the majority of the Industrial Board.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*