# VIRGIL FISHER v. F. L. FISHER AND ANOTHER.[1]

April 30, 1948.

No. 34,641.

*Holmes, Mayall, Reavill & Neimeyer,* for relators.
*Paull & Kaner,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review the decision of the industrial commission affirming an award of a referee.

The facts are not in dispute. The employe put in his case, and relators called no witnesses. Virgil Fisher, aged 25, was employed

[1]Reported in 32 N. W. (2d) 424.

as a salesman by his father, F. L. Fisher, doing business as Fisher Insulation Construction Company. The principal business of the company was selling and installing insulation, including roofing and siding, in the city of Duluth. Virgil had interested a friend, Robert Feiring, a homeowner, in having his house insulated. On the afternoon of July 12, 1946, he telephoned Feiring at the latter's residence in Duluth to make an appointment to further discuss the matter. Feiring informed him that he was going to play ball that evening at Portman Square, a public playground in Duluth, and would talk to him there. Virgil went to the playground that evening, and when he arrived Feiring was umpiring a ball game. He talked with Feiring while he was umpiring and testified that Feiring said "the game would be through in a few minutes, to wait for him." Feiring corroborated this testimony by saying, "I told him I would see him as soon as the game was over." This conversation occurred when the first game was about half over. It appears from the record that another game was to be played that evening in which Feiring was to play. After this brief conversation with his prospect, Virgil then walked from behind an iron fence, where he talked with Feiring and joined some other spectators who were sitting on a side bank watching the ball game. Approximately ten minutes later he was struck when a youngster threw part of a broken bottle. The injury resulted in the loss of his right eye. There was testimony that a broken "coke" (Coca Cola) bottle had been observed near the third base line where Fisher was sitting. The caretaker of the field house at Portman Square, which is adjacent to the ball park and part of the public park system of the city of Duluth, testified that a "coke" vending machine was in operation in the field house and had been for many months. He further testified that customarily about two out of 15 purchasers would drink the contents of their bottles in the field house, and that the others would take them out and throw them all over the grounds, which practice resulted in a number of bottles being broken. He said that they were broken every day and evening of the week. From the testimony, it appears that the glass was thrown by a young boy either casually or at some young fellows who

had been tormenting him by tossing pebbles down his neck. At any rate, it was thrown with no intention of hitting Virgil.

The referee found that the employe had sustained an accidental injury arising out of and in the course of his employment, and the industrial commission affirmed his findings.

The opinion of the industrial commission reasons that because of the corroborated testimony as to why Virgil went to Portman Square there can be no question that the injury arose during the course of his employment, and, further, that upon consideration of all the evidence there was a causal connection between the conditions under which the completion of the sale to the customer was required to be made and the resulting accident. The contention of relators is that on the undisputed facts the employe did not sustain a personal injury caused by an accident arising out of and in the course of his employment. That is the sole issue in the case.

It is the established policy of this court that in reviewing the findings of the industrial commission our function is not to determine whether on the facts the decision of the commission is correct, or even preferable to another, but rather, and only, to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts. 6 Dunnell, Dig. & Supp. § 10426. The same policy has been expressed by this court in cases saying that the findings of fact of the commission are entitled to very great weight and that this court will not disturb them unless they are manifestly contrary to the evidence, 6 Dunnell, Dig. & Supp. § 10426; or if after an impartial consideration of the evidence and of the inferences which may fairly and reasonably be drawn therefrom reasonable minds might reach different conclusions upon the question, that the findings must stand. Tometz v. Biwabik Min. Co. 171 Minn. 302, 213 N. W. 897.

It is also established policy that the workmen's compensation act should receive a broad and liberal construction in the interest of workmen to carry out its policy. 6 Dunnell, Dig. & Supp. § 10385.

In the case before us, relators contend that employe's injury was received outside the course of his employment, on the theory that

his watching a ball game constituted a temporary departure from his employment, even though relators admit that employe was at Portman Square solely for the purpose of seeing a business prospect and that while watching the ball game he was merely waiting for an opportunity to further negotiate with his sales prospect. This court will take judicial notice of the fact that in this type of selling an essential element is that of waiting for an opportunity to talk with the prospect. The record further shows that as a result of the negotiations between Virgil and Feiring before and after the accident the Fisher Insulation Construction Company insulated Feiring's house at the price quoted by Virgil. In affirming the ruling of the industrial commission to the effect that the injury occurred in the course of the employment, we do not mean to say that a salesman could not, while waiting for a prospect, so far depart from his employer's business on an enterprise of his own as to put him outside the coverage of the act. We only hold that here there was no such departure. To adopt a contrary view would lead to the absurd result that the employe would have had to remain rooted to the spot where he last spoke with Feiring in order to retain coverage under the act while waiting.

The more difficult question here presented is whether the injury in question was one arising out of the employment. We have held that some connection must be found between the employment and the accident so that the latter may with some reason be said to arise out of the former. Auman v. Breckenridge Tel. Co. 188 Minn. 256, 260, 246 N. W. 889, 890. In that case we said:

"* * * Some force and meaning must be given to the expression 'personal injury * * * caused by accident arising out of' the employment. 'Arising out of' are words of limitation. The accident must be caused by some risk inhering in or incident to the employment as distinguished from a risk or hazard to which all are equally exposed.

* * * * *

"* * * And in order for an employe to be awarded compensation from his employer for disability caused by the accidental discharge

of a gun he must prove that one in the employment is more likely to be injured from such a source than those who are not."

In Bloomquist v. Johnson Grocery, 189 Minn. 285, 249 N. W. 44, this court held that there must be proof of a causal connection between the conditions under which the work has to be done and the accident.

We are satisfied that nothing said in these two cases, which relators rely upon as controlling, precludes us from affirming the ruling of the industrial commission. In the Auman case, the court held that a stray bullet injuring an employe did not bring the accident within the meaning of the term *arising out of* the employment, but said (188 Minn. 258, 246 N. W. 890):

"* * * Of an employer who would set a crew of men to work in deer territory during the open season it could readily be found that an injury caused by a stray bullet arose out of the employment."

In the Bloomquist case, a grocery store employe sustained an injury when a bug flew into his eye while he was waiting on a customer. The court held that, in the absence of any evidence that bugs of that type infested the store, or that they were more numerous in the store than in any other place, the injury did not arise out of the employment, by analogy to the Auman case.

The Auman and the Bloomquist cases can be distinguished from the case at bar in that in neither of those two cases did it appear that the accident resulted from a risk which was peculiar to the employment. In the Auman case, there was no particular risk of injury from gunshot in the area where the employe was working. Had there been such risk, it is evident that the court would have found otherwise, from its dictum to the effect that had the employe been required to work in deer territory in season when so struck it could readily have been found that the accident arose out of the employment. In the Bloomquist case, there is no evidence to show that the type of bug which flew into the employe's eye infested the store or that they were more numerous in the store than at any other place. In the case at bar, the testimony to the effect that the

public playground where the accident occurred was usually littered with broken glass and that on a number of occasions the youngsters had to be cautioned about throwing things is sufficient to sustain the ruling of the industrial commission that this was an unusual hazard out of which the employe's accident arose. It is admittedly true, as relators contend, that the other spectators at the ball game were equally exposed to the same risk and that therefore the hazard, in a sense, was common to the playground. But we are not prepared to say, in view of the special nature of Virgil's work, which regularly involved his waiting upon the pleasure of his prospects under conditions and circumstances not of his own choosing, that he must insure his safety at his own peril while doing his employer's work by waiting for an opportunity to sell.

In one of our late cases, which carefully considers the meaning of the phrase "arising out of and in the course of" employment, Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 598, 297 N. W. 19, 21, we said:

"It is apparent that the new standard 'arising out of and in the course of' employment does not require that the latter be the proximate cause of injury. If the legislature had meant that it would have said so. The words 'in the course of' impose a requirement in respect to time and place. The phrase 'out of' expresses a factor of source or contribution rather than cause in the sense of being proximate or direct."

In the case before us, there is sufficient evidence to sustain the ruling of the industrial commission that the conditions under which Virgil was waiting, and thereby working, were the "source or contribution to the occurrence of the accident." Respondent is allowed $250 attorneys' fees and costs in this court.

Affirmed.