DONALD G. HEIDTMAN, APPELLANT, *v.* NEVADA INDUSTRIAL COMMISSION, RESPONDENT.

No. 4448

February 7, 1962                    368 P.2d 763

---

*Adams, Reed, Bowen & Thatcher,* of Reno, for Appellant.

*William J. Crowell,* of Carson City, for Respondent.

## OPINION

By the Court, McNAMEE, J.:

Appellant alleges in his complaint that on January 21, 1957 he suffered injuries by accident arising out of and in the course of his employment and that he is entitled to recover all benefits provided by the Nevada Industrial Insurance Act. He further alleges that he was a salesman on said day and his employment as such could be carried on either at the place of his employer's business or elsewhere on any day of the week including Sundays. The answer of respondent admits that appellant was employed as a salesman on January 21, 1957 but denies that at the time appellant suffered injuries he was engaged in the course or scope of his employment.

The trial before the court without a jury resulted in a judgment in favor of respondent. Appeal is from said judgment and the order denying appellant's motion for a new trial.

Appellant testified that on the day he received his injuries he was employed as a used car manager for an automobile establishment in Reno, Nevada, at a fixed salary plus commissions. His basic hours of employment were from 8:00 A.M. to 6:00 P.M., but he was on call at all times including Sundays and holidays. Pursuant to his duties as salesman he was authorized to take any car from the used car lot for the purpose of demonstration. He was interested in sports, particularly in the sport of archery. Two or three days before an archery meet to be held at Sutcliffe, Nevada, he met one Waddell who at that time professed interest in a Cadillac automobile. At that time appellant told Waddell that he

would bring such an automobile to the Sutcliffe meet. Appellant, taking with him his archery equipment, drove the Cadillac to Sutcliffe with the intention of entering the meet as one of the participants therein, and at the same time hoping to sell the automobile to Waddell. Waddell was in charge of the archery meet when appellant arrived. They had a brief conversation during which appellant mentioned that he had the car with him. Waddell did not see the car at any time before or after the meet. After Waddell started out on the course, appellant himself entered the meet and with a subsequent group followed Waddell's group around the course. During the meet appellant saw Waddell several times and mentioned the car to him at least one time. When Waddell had finished the 9th hole on the archery course, appellant, in cutting across the course to go to the parking lot, fell into an excavation on the course, and was injured.

Waddell corroborated the foregoing testimony with respect to the conversations between him and appellant and the fact that he had not examined the Cadillac at any time. Waddell further testified that he did not thereafter purchase the Cadillac or any other car from appellant or his employer. This is the only testimony given before the trial court.

The only other evidence consists of the written statement given by appellant to the Nevada Industrial Commission dated February 10, 1957, wherein appellant related that he drove his employer's Cadillac to Sutcliffe, Nevada, because Waddell had professed interest in buying a Cadillac and he knew Tony Waddell would be at Sutcliffe: "When I arrived there the shoot had started so I entered also. I saw Tony and took him aside and showed him the Cad. He professed interest but thought he would like a later model. We talked about cars and continued to shoot. Dan Jenkins and I later got together and talked automobiles and he said he would buy a new one in a month or two from me. Upon learning that I could not make a sale at that time I returned to the car. On the way I met with my accident and broke my foot."

The formal findings of the court are limited to the brief statement that "the plaintiff has failed to sustain the burden of proof as to the allegations contained in his complaint." Findings in such form are not commendable (see Crumley v. Fabbi, 47 Nev. 14, 213 P. 1048), are not in accordance with the express requirements of Rule 52(a) NRCP, and manifestly do not facilitate the review of a cause on appeal. Because of the paucity of findings, we must look to the written decision of the trial court, as we did in Pearson v. Pearson, 77 Nev. 76, 359 P.2d 386, to ascertain what matters were considered by the trial court in its determination of the issues.

In its decision the court below said: "[I]t must be assumed that plaintiff reached his employment destination, that he then deviated beyond his business destination by engaging in the archery competition and then upon his return to the employment destination he was injured. The exact point of determination then is whether he was within the scope of his employment at the time he was injured. In deciding that he was not, I think it first must be assumed that plaintiff was within the scope of his employment when he went out to Sutcliffe and that he was in the process or about to resume that employment when he started for the car to intercept Waddell."

The trial court's finding that appellant was covered by the Industrial Insurance Act, while he was en route to Sutcliffe and up until the time he entered the archery meet, is conceded by the parties to be proper. It is the further finding (that appellant deviated from his employment when he entered the meet and had not resumed his status as an employee at the time he was injured) which the appellant attacks.

Whether or not appellant while on a business trip deviated therefrom would ordinarily be a question of fact for the trial court, which question in the present case was decided in the affirmative and against the appellant. True it is there is no formal finding to this effect

dehors the written decision of the court, but such a finding will be implied. Krick v. Krick, 76 Nev. 52, 56, 348 P.2d 752. It seems to be appellant's assertion however that only if there is some evidence to support such a finding could a factual question arise, and that whether any evidence of a deviation was before the lower court is a question of law reviewable on appeal.

Evidence in the record which supports a finding that a deviation occurred is the testimony of appellant that he intended to enter the archery meet at the time he left Reno coupled with his special interest in the sport of archery, he being at that time Nevada State Field Governor for the National Field Archery Association. In this connection the trial court said: "While he [appellant] admitted that he might have gone to Sutcliffe to take part in the archery meet and as a sideline to sell a car, he had serious doubts as to whether the sole purpose in going to Sutcliffe was merely to take part in the contest."

Further facts relevant to deviation are: Appellant took with him to Sutcliffe his archery equipment; he entered the archery meet at Sutcliffe; his injury occurred while he was on the archery course; the sales prospect, Waddell, at no time on the day of appellant's accident inspected the car which appellant hoped to sell to him and no sales negotiations were had at any time thereafter between appellant and Waddell; and appellant at one point declined to testify positively that a prospective car sale and not his archery interests was what motivated him to go to Sutcliffe.[1]

[Headnotes 5–7]

Appellant did intimate in his testimony that it was desirable for him to enter the archery meet as a matter of good salesmanship, but in view of the inconsistencies contained in appellant's written statement in evidence

---

[1]"Q. Isn't it a fact, Mr. Heidtman, that what took you from Reno, Nevada, on a poor day, was not to sell a car but to take in the archery shoot at Sutcliffe, Nevada? Isn't that what took you out? And, as a sideline, you were going to show a car if there was someone interested?

"A. On that particular day, I seriously doubt it.

"Q. But it could have been true?

"A. I could have gone out, yes. I must admit it."

as aforesaid the court properly could refuse to give any significance to such testimony relating to good salesmanship.[2] As stated by this court in In re Duffill's Estate, 57 Nev. 224, 231, 61 P.2d 985, 987, "it is a well-recognized rule that a court is not bound to accept uncontradicted testimony. It may consider the inherent improbabilities of the statements of witnesses," and in Moore v. Rochester W. M. Co., 42 Nev. 164, 178, 174 P. 1017, 1021, 19 A.L.R. 830, we said: "It is true that intent is a matter of fact that ordinarily may be testified to by the person whose intent is in question, but if the reason for the motive is equivocal, it is not conclusive as against presumptions and inferences equally as credible."

We are thus confronted with the aforesaid evidence of deviation and the reasonable inferences arising therefrom. A proper inference could be that even if appellant had a dual purpose in going to Sutcliffe (which could result in his being covered under the act while he was en route to Sutcliffe), his entry into the archery meet after arriving at his destination was a matter wholly personal concerning his own pleasure and not connected with or incidental to his employment as an automobile salesman.

A finding of fact may be based upon an inference which is supported by the evidence. Cummings v. Kendall, 41 Cal.App.2d 549, 107 P.2d 282; Turner v. Vineyard, 46 Del. (7 Terry) 138, 80 A.2d 177, 179.

We hold as a matter of law that there is sufficient evidence to sustain the court's conclusion that appellant's entry into the meet was personal and any risk resulting therefrom likewise would be personal. Therefore it was proper for the trial court to conclude that a deviation from his employment had occurred at the time of appellant's injury.

[2]In McCoy v. Simpson, 346 Mo. 72, 139 S.W.2d 950, the Missouri Supreme Court stated that the trier of the facts cannot disregard competent, substantial testimony, but it is not compelled to accept it as true even though it is unimpeached and uncontradicted. See also Scaggs v. Lindsey Well Service, Inc., 366 P.2d 945 (Okla. 1961).

Where there has been a deviation, as here, then it is necessary to determine when, if at all, the employee returned to his employment.

The evidence discloses that appellant was en route to the parking lot where he had left the Cadillac, and although appellant's testimony is not consistent on this point we can assume that he expected to see Waddell there. The accident occurred before he reached the parking lot and while he was still on the archery course.

In 1 Larson, Workmen's Compensation, sec. 19.33, at 276, the author states:

"We come now to the deviation problem which has produced the sharpest split of opinion of all: the question whether an employee, who has completed a personal side-trip and is moving back toward his business route when injured, should be deemed to have resumed his employment as soon as he starts back, or only when he actually regains the main business route or destination. * * * The majority of compensation cases deny recovery in these circumstances, on the ground that a side-trip is a personal deviation until completed, but a minority have taken the position that the journey toward the employment destination or route should be compensable, because the personal motivation is spent, and the employee's object has become the single-minded purpose of getting to his employment destination."

Some of the compensation cases supporting the majority view are as follows:

Red Arrow Bonded Messenger Corp. v. Industrial Acc. Commission of Cal., 39 Cal.App.2d 559, 103 P.2d 1004; Fidelity & Casualty Co. of N. Y. v. Moore, 143 Fla. 103, 196 So. 495; Parker v. Twin Falls County, 62 Ida. 291, 111 P.2d 865; Public Service Co. v. Industrial Commission, 395 Ill. 238, 69 N.E.2d 875; Warren v. Globe Indemnity Co., 217 La. 142, 46 So.2d 66; Carner v. Sears Roebuck & Co., 337 Mich. 219, 59 N.W.2d 263; Kayser v. Carson Pirie Scott & Co., 203 Minn. 578, 282 N.W. 801; Duggan v. Toombs-Fay Sash & Door Co., 228 Mo.App. 61, 66 S.W.2d 973; Kinkead v. Management & Engineering Corp., 103 S.W.2d 545 (Mo.App. 1937); Luke v. St. Paul Mercury Indemnity Co., 140 Neb. 557, 300 N.W. 577;

McNaught v. Standard Oil Co., 128 Neb. 517, 259 N.W. 517; Clegg v. Interstate Ins. Co., 130 N.J.L. 307, 32 A.2d 570; Weaver v. Knollwood Country Club, 283 App.Div. 1124, 131 N.Y.S.2d 482; Applegate v. Accident & Casualty Ins. Co., 277 App.Div. 1073, 100 N.Y.S.2d 636; O'Keefe v. Friederich & Son, 260 App.Div. 818, 22 N.Y.S.2d 402; Lansing v. Hayes, 196 App.Div. 671, 188 N.Y.S. 329, aff'd in 233 N.Y. 614, 135 N.E. 940; Kirker v. McIntosh Co., 156 Pa.Super. 199, 39 A.2d 846; Gray v. Dept. of Labor & Industries, 43 Wash.2d 578, 262 P.2d 533; Automotive Parts & Grinding Co. v. Industrial Commission, 220 Wisc. 122, 264 N.W. 492.

Examples of the decisions supporting the minority views are:

London Guarantee & Accident Co. v. Herndon, 81 Ga.App. 178, 58 S.E.2d 510; Macon Dairies v. Duhart, 69 Ga.App. 91, 24 S.E.2d 732; Sawtell v. Stern Bros. & Co., 226 Mo.App. 485, 44 S.W.2d 264.

Duggan, supra, distinguishes Sawtell, supra, both Missouri cases, with these words: "Sawtell [at the time of the accident] was on his way to the home of a prospective buyer, and was in the course of his employment. Not so with Duggan in this case."

Although cases involving the liability of an employer to a third person injured by the negligence of an employee in applying the deviation rule rest upon an entirely different rationale than that in workmen's compensation cases, it is interesting to note that even in tort liability cases the majority rule is that the relation of master and servant is not restored until the personal deviation is completed. The case of Murphy v. Kuhartz, 244 Mich. 54, 221 N.W. 143, 144, in commenting on the two views, states:

"There are cases which hold that where a servant in driving his master's truck so deviates from his regular route as to suspend the relation of master and servant, it is immediately restored when he starts to return. A leading case of this class is Riley v. Standard Oil Co., 231 N.Y. 301, 132 N.E. 97, 22 A.L.R. 1382. But by better authority it is held that the relation of master and servant is not restored until he has returned to the place

where the deviation occurred or to a corresponding place, some place where, in the performance of his duty, he should be."

It is to be noted that the Michigan Supreme Court in Carner v. Sears Roebuck & Co., supra, a workmen's compensation case, quoted with approval the said language in Murphy, supra.

The trial judge in denying compensation herein, in our opinion, properly followed the majority rule which in effect is a holding that the appellant had not terminated the deviation or resumed his status as an employee at the time of the injury. Denial of compensation therefore was not error.

Affirmed.

BADT, C. J., concurs.

THOMPSON, J., dissenting:

I dissent.

The lower court found that Heidtman was within the course of his employment and covered by the Industrial Insurance Act while en route to Sutcliffe and until the time he entered the archery meet. The commission concedes that finding to be correct under the circumstances of this case. With such finding and concession before us, I believe that the conclusion reached by the court below and the majority here is incorrect as a matter of law. Heidtman's business was to sell cars. Yet, the conclusion reached in this case announces that he was within the course of his employment when he had no possibility of making a sale, i.e., while driving alone from Reno to Sutcliffe, but that upon arrival at the appointed place to meet his customer and attempt to sell him a car he stepped out of bounds. The opportunity to sell a car to Waddell was at the archery meet where he was in participation. If Heidtman was within the course of his employment while driving to the appointed place for business, he must be considered to have been within the course of his employment while at such place attempting to make the sale. "Where the employee is combining his own business with that of his employer, or attending

to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury unless it clearly appears that neither directly or indirectly could he have been serving his employer." Ryan v. Farrell, 208 Cal. 200, 280 P. 945; Wiseman v. Industrial Accident Commission, 46 Cal.2d 570, 297 P.2d 649.

The lower court determined that Heidtman deviated from the course of his employment when he entered the archery meet. This is, of course, a conclusion of law drawn from the evidence. The majority seek to support such conclusion by reciting "evidence in the record which supports a finding that a deviation occurred" and by a further recitation of "facts relevant to deviation." However, from an examination of the facts therein referred to, it does not appear that Heidtman had departed from the place where he had arranged to carry on his business with Waddell. Nor does it appear that he left his prospective customer to go elsewhere. To the contrary. *He remained at Sutcliffe and even attempted to discuss business with Waddell during the archery meet.* This is of paramount significance because the claimed deviation must be identifiable, before the employee is removed from the course of his employment. 1 Larson, Workmen's Compensation, sec. 19.00. Every case, without exception, cited by the commission in its brief, or referred to by the majority herein, wherein it was held that a deviation occurred, involved an identifiable deviation; indeed, in each instance the employee was not at the place where his business was to be carried on, nor was he, if a salesman, with his prospective customer. See each case cited by the majority at paragraphs 21 and 23 of its opinion. Absent such facts, an identifiable deviation does not appear from the record before us.

It is, therefore, my view that we are dealing only with the dual purpose trip problem, and not with the question of an identifiable deviation from the course of employment. The most that can be made of Heidtman's participation in the archery meet is that he was serving two purposes at once, his pleasure, and the business of his employer. All authorities agree that this circumstance,

of itself, does not remove him from the coverage of the Industrial Insurance Act.

Benjamin Cardozo, when Chief Justice of the Court of Appeals of New York, wrote the landmark opinion, Marks v. Gray, 251 N.Y. 90, 167 N.E. 181. He stated, inter alia: "We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

Let us apply such test to the case before us. The commission conceded that Heidtman was within the course of his employment while traveling to Sutcliffe! The lower court found such to be the fact. We know, therefore, that service to his employer was, at least, a concurrent cause of his trip. We know that the inference was permissible that the trip would have been made though his private errand, participation in the archery meet, was canceled. We know that his work had a part in creating the necessity for his trip. Therefore, absent an identifiable deviation thereafter, which does not appear for the reasons heretofore mentioned, Heidtman must, as a matter of law, be considered to have been within the course of his employment when injured.

In Fisher v. Fisher, 226 Minn. 171, 32 N.W.2d 424, a salesman made an appointment with a prospective customer to discuss home insulation. He was to meet his customer during the evening at a public playground where the customer was to umpire a baseball game. He spoke with his customer and was advised that the game would be through in a few minutes and to wait for him.

Following this conversation, the salesman walked from behind an iron fence where he had spoken with his customer and joined with other spectators who were sitting on a side bank watching the ball game. Shortly thereafter he was struck when a youngster threw part of a broken bottle. The injury resulted in the loss of his right eye. The industrial commission conceded that the salesman was at the ball park for the purpose of seeing a business prospect and that, while watching the ball game, he was merely waiting for an opportunity to further negotiate with his sales prospect. However, it contended that, by watching the ball game a deviation or temporary departure from his employment occurred, with the result that he could not enjoy the benefits of industrial insurance. In holding that the salesman was within the course of his employment at the time of the accident, and therefore entitled to the benefits of industrial insurance, the court, among other things, stated "In affirming the ruling of the industrial commission to the effect that the injury occurred in the course of the employment, we do not mean to say that a salesman could not, while waiting for a prospect, so far depart from his employer's business on an enterprise of his own as to put him outside the coverage of the act. We only hold that here there was no such departure. To adopt a contrary view would lead to the absurd result that the employee would have had to remain rooted to the spot where he last spoke with Feiring in order to retain coverage under the act while waiting." The claimed deviation in Fisher v. Fisher, supra, was not an identifiable one. The salesman was at the place where his business was to be carried on. He was merely waiting for the opportunity to discuss it with the prospect. One cannot help but conjecture as to what the lower court's view would have been in the instant case had Heidtman injured himself while just "walking around" rather than while walking during participation in the archery meet.

The cases of Fintzel v. Stoddard Tractor, 219 Iowa 1263, 260 N.W. 725, and Sawtell v. Stern Bros. & Co., 226 Mo.App. 485, 44 S.W.2d 264, support my view, though in the latter case the salesman did depart

momentarily from the place where he was to meet his customer, and the court determined such departure to be insignificant.

For the reasons mentioned, I would conclude that Heidtman sustained an injury by accident, arising out of and in the course of his employment. NRS 616.270 (1).