PEOPLE v. LEWIS.

1. BIGAMY—COMMON-LAW MARRIAGE SUFFICIENT.
    Proof of actual marriage is sufficient to convict of bigamy, and it is immaterial whether one or more of the marriages was ceremonial or common-law.

2. MARRIAGE—COMMON-LAW MARRIAGE.
    Where a ceremonial marriage was void because at the

On presumption as to validity of former marriage in prosecution for bigamy, see note in 9 L. R. A. (N. S.) 1036.

time of its celebration the husband had a lawful wife living but after the impediment was removed by the first wife's obtaining a divorce the parties continued to live together as husband and wife, he holding her out as his wife and she in good faith believing she was his wife, a common-law marriage existed, and it is immaterial whether either ever heard that the first wife had obtained a divorce.

3. INDICTMENT AND INFORMATION — VARIANCE — AMENDMENT PERMISSIBLE.

Although the information in a prosecution 'for bigamy charged the former marriage of defendant as of the date of the ceremony rather than as of the date of the removal of the impediment, when a common-law marriage resulted, defendant's conviction will not therefor be reversed, on error, where he made no application for continuance or delay to obtain witnesses, claimed no surprise by the proofs and was in no way harmed, since, under 3 Comp. Laws 1915, § 15749, the information could be amended in either the circuit or Supreme Court.

Error to Berrien; White (Charles E.), J. Submitted October 13, 1922. (Docket No. 166.) Decided December 5, 1922.

Raymond Lewis was convicted of bigamy, and sentenced to imprisonment for not less than 2 nor more than 5 years in the State prison at Jackson. Affirmed.

*John J. Sterling* and *George W. Bridgman,* for appellant.

*Merlin Wiley,* Attorney General, *Charles W. Gore,* Prosecuting Attorney, and *George H. Bookwalter,* Assistant Prosecuting Attorney, for the people.

Defendant was married to Alice Hennessey at Benton Harbor, October 5, 1911, by a ceremonial marriage. He was married to Florence Weisback at Buffalo, New York, on February 12, 1919, by a ceremonial marriage. February 7, 1920, Alice Hennessey-Lewis obtained a

decree of divorce from defendant. Defendant and
Florence Weisback continued to live together as hus-
band and wife in the State of New York for over a
year and a half after Alice Hennessey had obtained
the decree of divorce. Defendant introduced her as
his wife and she had no knowledge that he had ever
been married before. They sustained the same
marital relations as before and it is quite doubtful if
either knew of the divorce. August 11, 1921, de-
fendant and Florence separated and he came to Berrien
county where he became acquainted with Edith Molter,
an unmarried woman, whom he married November
16, 1921, at South Bend, Indiana. Immediately after
their marriage they returned to and took up their
home in Berrien county. Defendant was arrested and
charged in the information with the crime of bigamy
in that he married Edith Molter and lived with her
as husband and wife in the county of Berrien when
Florence Weisback, his lawful wife, was still living
and not divorced from him. The defense centers
around the claim that at the time defendant married
and lived with Edith Molter he was not the lawful
husband of Florence Weisback-Lewis, that he was
never lawfully married to her, that the ceremonial
marriage took place when he had a lawful wife living
and was, therefore, void; that he was not bound to
her by a common-law marriage and that his marriage
to Edith Molter was, therefore, a lawful marriage.
By proper objections, requests for a directed verdict
and assignment of error on the charge, he here
presents the questions for review. Numerous New
York decisions were introduced in connection with the
statute law of domestic relations of that State for the
purpose of establishing the law there, and the trial
judge charged the jury in substance that the cere-
monial marriage in New York was void, but that if
defendant continued to live with Florence Weisback-

Lewis as husband and wife long after the disability to their marriage was removed by the decree of divorce granted Alice Hennessey-Lewis, that then she became his lawful wife and the jury would be authorized in finding defendant guilty.

Fellows, C. J. (*after stating the facts*). The case most strongly relied upon by defendant's counsel, *McCombs* v. *State*, 50 Tex. Crim. Rep. 490 (99 S. W. 1017, 9 L. R. A. [N. S.] 1036, 14 Ann. Cas. 72, 123 Am. St. Rep. 855), unquestionably sustains their contention. *Halbrook* v. *State*, 34 Ark. 511 (36 Am. Rep. 17), is a similar case. Other cases in other jurisdictions also have a tendency to support their contention. But we are persuaded that the case must be disposed of upon the holdings in this State and the State of New York. In the final analysis the questions to be determined are within rather a narrow compass. They are:

(1) May a prosecution be maintained for bigamy where one of the marriages was a common-law marriage? And,

(2) Does the testimony tend to establish that Florence Weisback-Lewis was the common-law wife of defendant under the law of the State of New York?

Manifestly if there was a common-law marriage in New York valid under the laws of that State, it must be treated as valid by the courts of this State.

1. This court from the early decisions down has adhered to the well-recognized rule that in bigamy cases there must be proof of actual marriage. But this court did not in the early cases hold that there must be proof of ceremonial marriages in order to sustain a conviction of this crime. When the question was squarely presented in *People* v. *Mendenhall*, 119 Mich. 404 (75 Am. St. Rep. 408), this court held that a conviction of bigamy should be affirmed where

one of the marriages was a common-law marriage. We there cited *Hayes* v. *People,* 25 N. Y. 390 (82 Am. Dec. 364), in which case Mr. Justice Allen said:

"But, whether a marriage is celebrated *in facie ecclesiæ,* or is contracted by the present consent of the parties, it is the consent alone that creates the marital relation; and, if either party is incapable of giving consent, there is no marriage. The statute of bigamy is consistent with the common law, and recognizes any form of marriage, either for the first or second marriage, which would be good at common law; and the inquiry is, whether the marriage alleged was valid, that is, as to the first marriage, whether it was valid as a marriage in fact, and as to the second, whether it would have been valid but for the first, which rendered the accused incapable of contracting."

It must, we think, be taken as the settled law of this jurisdiction that a prosecution for bigamy is maintainable even though one of the marriages was a common-law marriage, or, as tersely stated by the supreme court of California in *People* v. *Beevers,* 99 Cal. 286 (33 Pac. 844):

"The crime of bigamy is committed when a person marries who has another husband or wife living at the time. The mere form of the first marriage is entirely immaterial. The vital inquiry is, is such a person a husband or wife?"

2. The ceremonial marriage of defendant and Florence Weisback in the State of New York was void. The impediment to its validity was the fact that he then had a lawful wife living in the person of Alice Hennessey-Lewis. February 7, 1920, that impediment was removed by a decree of divorce granted to Alice. Thereafter and for a period of over a year and a half defendant and Florence continued to live in the State of New York as husband and wife. He held her out as his wife and she in good faith believed she was his wife and in con-

sonance with that belief sustained marital relations
with him.    Do these facts make her the common-
law wife of defendant under the law of that State?
We think this question must be answered in the af-
firmative.    *In re Wells' Estate,* 123 App. Div. 79 (108
N. Y. Supp. 164), one of the cases introduced in evi-
dence in the court below to establish the law of New
York, is a leading case on the subject in that State.
The facts in that case, briefly stated, were that one
Arthur Wells and Emma Garrett were married in
1889 by a ceremonial marriage.    Mr. Wells then had
a living wife who was confined in an insane asylum.
She died about five years after the ceremonial marriage
took place.    The parties to the ceremonial marriage
thereafter and until the death of Wells continued to
live together as husband and wife, she having no
knowledge of the former wife nor of her death.    It
was held that under these facts after the removal of
the impediment by the first wife's death a common-
law marriage existed between the parties.    The
opinion fully reviews the authorities and says:

"It seems to me, in view of the decisions and
authorities which have been referred to, that the rule
ought to be that where one person is free to enter
into the matrimonial relation, and does so in good
faith, but the other party is incapable of entering into
such relation because of a former wife or husband
living, or other impediment, when such impediment
is removed, if the parties continue matrimonial co-
habitation, continue to introduce and recognize each
other as husband and wife, and are so recognized by
their relatives, friends and by society, it ought to be
held that from such moment they are actually husband
and wife, and that under such circumstances it is of
no importance that a formal agreement to live to-
gether as husband and wife was not entered into or
that either did not know that the impediment to such
an agreement had been removed, when in fact it had
been so removed and both parties were competent to
enter into the matrimonial state."

In *Matter of Ziegler* v. *Cassidy's Sons*, 220 N. Y. 98 (115 N. E. 471, Ann. Cas. 1917E, 248), Chief Justice Hiscock fully considers the statute law of New York on domestic relations and holds that while common-law marriages were not recognized from 1902 to 1907, they thereafter were. See, also, *In re Hinman*, 147 App. Div. 452 (131 N. Y. Supp. 861). Unquestionably New York has adopted the rule which is announced in 1 Bishop on Marriage, Divorce and Separation, § 970, in the following language:

"If the parties desire marriage, and do what they can to render their union matrimonial, yet one of them is under a disability, as where there is a prior marriage undissolved, their cohabitation, thus matrimonially meant, will, in matter of law, make them husband and wife from the moment when the disability is removed; and it is immaterial whether they knew of its existence or its removal, or not, nor is this a question of evidence. This doctrine is overlooked in some of the cases, but it is abundantly sustained by others, and the reasoning on which it rests is conclusive. Here are the mutual present consent, to which not even written or spoken words are necessary, and consummation, which is useful in the proofs, but is not necessary,—more, therefore, than the law requires."

In *Re Fitzgibbons' Estate*, 162 Mich. 416 (139 Am. St. Rep. 570), this court divided evenly on the question of whether we should adopt this rule, but both opinions agreed that it had been adopted in New York. The trial court was, therefore, not in error in submitting to the jury the question of whether Florence Weisback-Lewis was the lawful wife of defendant when he married Edith Molter and afterwards lived with her in Berrien county.

3. Defendant's counsel also insist that there was a fatal variance between the information and the proofs in this that the information charged the marriage of defendant to Florence Weisback to have been on the

date of the ceremonial marriage whereas the proof showed it to have been at a later date, *i. e.*, that of the removal of the impediment and continuing cohabitation.    There is very respectable authority that the date of the first marriage need not be alleged. See Bishop on Statutory Crimes (3d Ed.), § 602; *State* v. *Hughes,* 35 Kan. 626 (12 Pac. 28, 57 Am. Rep. 195).    But be that as it may, our statute of amendments is sufficiently broad to permit an amendment to the information.    Section 15749, 3 Comp. Laws 1915; *People* v. *Meyer,* 204 Mich. 331; *People* v. *Griffin,* 219 Mich. 617.    And the amendment could be made in the circuit or here.    Defendant was in no way misled or prejudiced by the variance.    He made no application for a continuance or delay to obtain witnesses, claimed no surprise by the proofs and was in no way harmed.

The conviction will be affirmed.

WIEST, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.