## RYAN v. RANDALL.

1. HUSBAND AND WIFE—VALIDITY OF MARRIAGE—ESTATES BY EN-
TIRETIES—APPEAL AND ERROR.
   Finding of court below on disputed question of fact that mar-
   riage occurred after impediment thereto had been removed,
   that marriage was valid, and that parties took title to real
   property as tenants by entireties rather than as tenants in
   common, being supported by evidence, is not disturbed, on
   appeal.

2. MARRIAGE—REMOVAL OF IMPEDIMENT—COMMON-LAW MARRIAGE.
   Where parties to agreement and relationship which, but for
   existence of impediment, would have constituted valid marriage
   continue in relationship in good faith upon removal of im-
   pediment, law will establish valid common-law marriage.

Appeal from Wayne, Campbell (Allan), J. Sub-
mitted October 15, 1930. (Docket No. 88, Calendar
No. 35,251.) Decided December 2, 1930.

General characteristics and validity of common-law marriage,
see annotation in L. R. A. 1915E, 8, 60.

Habit and repute as essential to common-law marriage, see
annotation in 33 A. L. R. 27.

Bill by Terese Marguerite Ryan, by next friend, against Thelma Randall for cancellation of certain deeds. From decree for defendant, plaintiff appeals. Affirmed.

*Dohany & Dohany,* for plaintiff.

*Lightner, Oxtoby, Hanley & Crawford,* for defendant.

POTTER, J. Plaintiff, by her next friend, filed the bill of complaint herein against defendant Thelma Randall, who she alleges is known by various names. The bill of complaint alleges plaintiff is the adopted daughter of John J. Ryan, deceased, who died in Detroit, February 6, 1928, intestate. John J. Ryan, on May 19, 1927, was the owner of certain real estate of the value of $10,000 and upwards, mentioned and described in the bill of complaint. The bill alleges defendant obtained from John J. Ryan, by fraud and undue influence, conveyances of this real estate to one Myrtle McFarlin, who in turn conveyed the same to John J. Ryan and Thelma Ryan, his wife, and upon the death of John J. Ryan the record title thereto vested in defendant. The claim of undue influence was abandoned upon the trial. Plaintiff's claim rests upon the theory that a tenancy by the entirety in the real estate above was not created by these conveyances but the result of such conveyances was to vest title to a one-half interest in the property in defendant, and title to the other half interest remained in the estate of John J. Ryan, it being plaintiff's claim that John J. Ryan and Thelma Ryan were not in fact husband and wife, and that the parties took title to the real estate as tenants in common.

John J. Ryan came to the city of Detroit in 1917. At that time he was a plumber's helper. He apparently was a natural leader. He became engaged in the bootlegging business, and lived with Lillian Lee, and during the time he lived and resided with Lillian Lee, the adoption proceedings of plaintiff occurred. Subsequently his relationship with Lillian Lee ceased, and Lillian Lee married, as did John J. Ryan. It is the plaintiff's claim that the relationship existing between John J. Ryan and Lillian Lee constituted a common-law marriage. Perhaps Lillian Lee temporarily centered her affections on Ryan during the time they were living together. Their business was then primarily rum running from Canada and bootlegging in Detroit. After the parties separated, Lillian Lee, without obtaining a divorce from John J. Ryan, married, and John J. Ryan, without obtaining a divorce from Lillian Lee, married. We think, in view of the business in which these people had been and were then engaged, and their subsequent conduct, the parties did not regard themselves presently as husband and wife.

Plaintiff is the daughter of Sophia Keck, who formerly resided in Cleveland, and was married to George Keck January 8, 1920, in Detroit, Michigan. Subsequently she and her husband separated. She was being looked after by one Jimmie O'Brien. She was pregnant and went to Herman Keifer hospital, where plaintiff was born. Jimmie O'Brien at that time was working for John J. Ryan in the rum running and bootlegging business. After plaintiff's mother came from the hospital, she and the plaintiff went to live with Lillian Lee in the place occupied by her and John J. Ryan on the Detroit water front. Some time after this, adoption proceedings were had in the probate court of Wayne county, in

which Sophia Keck represented her name as Ruth O'Brien, Lillian Lee signed her name as Lillian Ryan, and although there is testimony John J. Ryan was present and signed the adoption papers, Mrs. Keck says that he was not. Whatever may have been the manner in which this adoption was brought about, we think the testimony shows that John J. Ryan participated in the adoption proceedings to such an extent that this case should be decided without prejudice to the plaintiff's claims as to the validity of the adoption proceedings. The question involved here is whether defendant and John J. Ryan were married. The defendant had been married prior to her marriage, if one existed, to John J. Ryan. A marriage ceremony was apparently performed between John J. Ryan and defendant. There is dispute as to the date of this ceremonial marriage. Two theories are advanced. It is plaintiff's theory that John J. Ryan and defendant were married, if at all, in 1922. At that time defendant had not obtained a divorce from her former husband, and it is the contention of plaintiff that this marriage was bigamous and therefore invalid. Defendant claims the marriage was consummated in 1924, when there was no impediment to defendant's marriage with John J. Ryan, and the marriage was therefore a valid ceremonial marriage and the parties husband and wife at the time the conveyances in question were made. The license and certificate of marriage appear to be dated in 1922, but they show the license and certificate of marriage were returned and filed September 5, 1924. There is considerable testimony that the records of marriages were changed and the affidavit and license were dated back to 1922. The trial court held the marriage was made in 1924, and therefore the parties were husband and wife when

the conveyances were made, and defendant took this real estate as surviving tenant by the entirety. We will not disturb the trial court's finding on this disputed question of fact. The record shows defendant continuously cohabited with John J. Ryan as his wife until his death.

"Where parties to an agreement and relationship which, but for the existence of an impediment, would have constituted a valid marriage continue in the relationship in good faith, upon the removal of the impediment the law will establish between them a valid common-law marriage." 38 C. J. p. 1320.

The decree of the trial court is affirmed, with costs.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.