JONES *v.* GENERAL MOTORS CORP.

1. MARRIAGE—COMMON LAW—TENNESSEE—ESTOPPEL.

Woman who had been deserted by husband and then remarried some 17 months later was married to second husband by at least a common-law marriage after expiration of five years where first husband was absent for such length of time and was not known by wife to be living and while a common-law marriage is not recognized in Tennessee, under the law of that State where the parties live together as husband and wife and are so accepted by the public, each is estopped to deny the validity of the marriage (Tennessee Code, § 8411).

2. SAME—COMMON LAW—REMOVAL OF IMPEDIMENT.

Where parties engage upon a contract of marriage, which is void because one has a living lawful spouse, which was unknown to one or both, uninterrupted cohabitation and reputation after removal of the impediment will produce a valid common-law marriage.

3. WORKMEN'S COMPENSATION—DESERTION OF WIFE—REMARRIAGE—DEPENDENT.

Where lawful wife of deceased employee had been deserted by him and thereafter she and another man lived as husband and wife prior as well as subsequent to employee's death, there was no time after his death when she was not remarried, hence she was not entitled to death benefits under the workmen's compensation act, his death 6 days after accident terminating any possible dependency which may have existed at time of injury (2 Comp. Laws 1929, §§ 8422, 8423).

Appeal from Department of Labor and Industry. Submitted January 3, 1945. (Docket No. 24, Calendar No. 42,863.) Decided February 20, 1945.

Claim by Mabel Ruth Watts Jones against General Motors Corporation, a Delaware corporation (Fisher Body Detroit Division), for compensation because of death of Senica Watts. Award to plaintiff. Defendant appeals. Reversed.

*Knight & Panzer,* for plaintiff.

*Henry M. Hogan (E. H. Reynolds, G. W. Gloster* and *Philip McCallum,* of counsel), for defendant.

BUSHNELL, J.   For the main facts in the instant case, we refer to *Watts v. General Motors Corporation,* 308 Mich. 499, wherein we held that Mrs. Winifred Watts, alleged widow of the late Senica Watts, by virtue of a common-law marriage, was not entitled to workmen's compensation benefits, inasmuch as at the time he married and lived with her he was not legally divorced from Mabel Ruth Watts Jones of Memphis, Tenn. We remanded the case to the department of labor and industry for the determination of whether Mabel Ruth Watts Jones was entitled to compensation. The statute, 2 Comp. Laws 1929, § 8422 (Stat. Ann. § 17.156), provides that a widow shall be conclusively presumed to be wholly dependent for support upon her husband with whom she lived at the time of his death or from whom at the time of his death the department of labor and industry shall find the wife was living apart for justifiable cause or because he had deserted her. The statute further provides under subsection (c) that:

"Upon the remarriage of a dependent wife receiving compensation as such, compensation payments to such wife shall cease," *et cetera.*

Section 8423, 2 Comp. Laws 1929 (Stat. Ann. § 17.157) provides:

"Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions."

When we remanded the case to the department, no further testimony was taken at the second hearing. The department determined that Mabel Ruth Watts Jones was entitled to compensation because of death of Senica Watts which occurred as a result of injuries received by him arising out of and in the course of his employment by defendant herein. At this second hearing defendant asked leave to take further testimony for the purpose of showing that Mabel Ruth Watts Jones had ceased to be the wife of Senica Watts long prior to his death, but the department refused to permit the taking of any further testimony and held that the record as it stood was sufficient.

Mabel Ruth Watts Jones testified that she married Mr. Jones March 21, 1925, and that on the 20th of November, 1942, when the deposition was taken, she was still married to him. The record does not show whether she contracted a ceremonial or common-law marriage with Jones in 1925. The department made some determinations not supported by a careful reading of the record. There can be no question but that the record indicates that Senica Watts deserted Mabel some 17 years prior to his death. She testified that she waited two years after Senica Watts deserted her in October, 1923, and the department held that approximately two years after the deceased left her, she remarried. The record specifically shows, however, that she waited only from October, 1923, to March, 1925, 17 months, before she remarried. She stated that she believed Watts was

dead, that she made inquiry, that relatives believed him to be dead, but she had no positive information whatsoever. When asked why she thought he was dead, she stated because he had left her without cause and did not "show up." Desertion in order to be a cause for divorce in Tennessee must be for two whole years. Michie, Tennessee Code, 1938, § 8426. This also was the law in 1917. The marriage to Mr. Jones in 1925 was absolutely irregular. Mrs. Jones, however, testified that she acted in good faith. Section 8411, Michie, Tennessee Code, 1938, states the law as it existed prior to and since 1925, as follows:

· "A second marriage cannot be contracted before the dissolution of the first. But the first shall be regarded as dissolved for this purpose, if either party has been absent for five years and is not· known to the other to be living."

Therefore, after five years from the time Senica Watts disappeared, Mrs. Jones, if acting in good faith, had a right to believe he was dead, and under the law of Tennessee could contract a valid marriage.. Irrespective of the form of her marriage to Mr. Jones in 1925, she and Mr. Jones lived together and held themselves out as husband and wife, both before and after the five-year period and continuously so until the time of the injuries to Senica Watts as well as after his death. It was at least a common-law marriage after 1930. Under the law of Tennessee common-law marriages are not recognized, but it has been expressly held that in the case of parties who live together as husband and wife and who treat each other as such and are so accepted by the public, an estoppel would arise on the part of each to deny the validity of the marriage. *Hale* v.

*State,* 179 Tenn. 201 (164 S.W.[2d] 822). Under the law of Tennessee as was stated in *Smith* v. *North Memphis Savings Bank,* 115 Tenn. 12, 33 (89 S. W. 392):

"For nearly a quarter of a century before the filing of this bill, the parties had cohabited as husband and wife, believing all that time that they had been lawfully married, as did all others with whom they had intercourse. And the question whether, after so great a lapse of time, such a marriage can be declared void from the beginning, is one in which not only the parties but the public also have a deep interest, in view of the consequences as affecting the status of the children born of the marriage, the relations of affinity and consanguinity which may have sprung from it, the rights of property which may have been acquired on the faith of it, and all the consequential rights, obligations, and duties growing out of it.

"Upon established principles and analogies of the law, we think it may be held that under the circumstances of this case a lawful marriage for all civil purposes will be conclusively presumed, and that neither the parties themselves, nor third persons, perhaps, will be heard to disprove or deny the marriage.

"It is a familiar doctrine that in all cases, except prosecutions for bigamy and actions for criminal conversation, a marriage may be presumed, or be established by reputation after a lapse of many years. *Ewell* v. *State,* 6 Yerg. (14 Tenn.) 364 (27 Am. Dec. 480); *Rogers* v. *Park's Lessee,* 4 Humph. (23 Tenn.) 480."

A somewhat similar question was before the Tennessee court in *Wright* v. *Armstrong,* 179 Tenn. 134 (163 S.W.[2d] 78). The workmen's compensation act in Tennessee provides that a wife shall be con-

clusively presumed to be wholly dependent unless it is shown that she was voluntarily living apart from her husband at the time of his injury:

"Arthur Armstrong and Melvina Armstrong were married prior to June 2, 1928. They were colored people and worked as tenant farmers in Mississippi county, Arkansas. During the latter part of December, 1929, Arthur Armstrong told his wife he was going to move to another farm a few miles away. She went to visit her brother and when she returned her husband had already moved. No particular effort was made by either party to get back together. They never lived together after she returned from the visit to her brother although they saw each other frequently. Arthur Armstrong supported, to some extent, a son which had been born to them— Richard Armstrong, but he never contributed anything to the support of his wife from the time they separated in 1929 until his death in 1941.

"In 1935 Melvina Armstrong entered into a bigamous marriage with Frank Gray and continued to live with him until the death of her husband and until the trial of this case. When she contracted this second marriage she knew she was not divorced from Arthur Armstrong. She stated that she married this second man 'because I needed somebody to kind of help me support myself. I just got tired of working.' Frank Gray supported her after he married her until the trial of this case. * * *

"Now, under these uncontroverted facts, was petitioner voluntarily living apart from her husband at the time of his death? We think she was. There is some conflict about the cause of the separation of this couple in 1929, but the fact is uncontroverted that she wilfully entered into the bigamous marriage with Frank Gray in 1935, lived with and was supported by him until the death of her husband and was still living with him at the time of the trial of this case and during all that time she made no effort

to return to Arthur Armstrong. Regardless of the cause of her separation from Arthur Armstrong she was certainly living apart from him voluntarily 'at the time of his injury' and there is no evidence to the contrary. Melvina Armstrong cannot recover for herself.''

Even assuming that the marriage between Mabel Watts and Jones was irregular in its incipiency, did it remain so after the impediment was removed whether that be because of five years elapsing after the disappearance of Senica Watts or because of his death? Mr. Jones has continuously lived with Mrs. Jones as husband and wife for over 17 years and she asserts that she is married to him. In some States, statutes provide, or decisions of the highest court hold, that when the impediment to a previous illegal marriage is removed, the marriage will be upheld. See notes in 95 A. L. R. 1292, and 144 A. L. R. 747. We find no such statute nor the question passed upon in the State of Tennessee, although the case of *Johnson* v. *Johnson,* 41 Tenn. 626, possibly indicates that this is the rule in Tennessee. We believe the correct rule of law is set forth by our court in *Hess* v. *Pettigrew,* 261 Mich. 618:

''While there is some difference of reasoning and ruling, the decided weight of authority is that where parties engage upon a contract of marriage, which is void because one has a living lawful spouse, which is unknown to one or both, uninterrupted co-habitation and reputation after removal of the impediment will produce a valid common-law marriage, although the fact of the impediment or of its removal may not have been known to either. The principal reasons upon which the rule rests are that the initial relationship was intended to be matrimonial, not illicit, and consent to present marriage evidenced by the ceremony continues from day to day

and becomes effective as a present taking in marriage on removal of the impediment. * * *

"After the Howe divorce both parties were competent to contract marriage. In all respects each considered and treated the other as a lawful spouse, so held out their relationship to the world and they were so accepted. The only questionable element of the relationship is whether they took each other presently as husband and wife. The reasoning that the consent and taking manifested by the former ceremony and cohabitation thereunder was a continuing state, renewed constantly and operated as a present taking when the impediment was removed, fits snugly into the law of marriage and accords with the public policy relating to it."

To like effect, see *People* v. *Lewis*, 221 Mich. 164. The testimony in the instant case leads only to the one conclusion that plaintiff was the wife of Mr. Jones immediately following the injuries and death of Senica, if not theretofore. There was no time after his death when plaintiff was not remarried, and, therefore, precluded from claiming compensation. While dependency is determined as of the date of the injuries, the death of Senica six days later removed it.

Plaintiff claims that a new issue has been raised by defendant's questioning the status of plaintiff at the time she learned of the death of Watts, as well as for a period prior and subsequent thereto. Defendant in its "Answer to notice and application for adjustment of claim," specifically denied that plaintiff was a dependent. In *Watts* v. *General Motors Corp., supra,* we remanded the case to the board to determine whether Mrs. Jones "is entitled under the statute (2 Comp. Laws 1929, § 8422 [Stat. Ann. § 17.156]) to compensation." Paragraph (c) of this section provides that compensation shall cease

upon the remarriage of a dependent wife. The question was properly before the department.

The order of the department of labor and industry is reversed, with costs to defendant, and the case is remanded for the purpose of entering an award in accordance with this opinion.

STARR, C. J., and NORTH, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.