STRATOS *v.* STRATOS.

1. MARRIAGE—TREATMENT FOR VENEREAL DISEASE.
    One receiving treatment for a venereal disease is incapable of contracting a marriage (3 Comp. Laws 1929, § 12695).

2. SAME—REMOVAL OF IMPEDIMENT—COMMON-LAW MARRIAGE.
    Continued cohabitation of parties as husband and wife after latter was cured of syphilis and the impediment to their marriage was thereby removed resulted in a common-law marriage (3 Comp. Laws 1929, § 12695).

3. DIVORCE—COMMON-LAW MARRIAGE—ADVERSE WITNESSES.
    Where wife by virtue of a common-law marriage, sought divorce, and woman with whom defendant had subsequently established a liaison was called to testify by plaintiff's attorneys, it is presumed that she was called as an adverse witness.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DE NOVO REVIEW—EVIDENCE.
    Admissibility of impeaching testimony of husband of woman with whom defendant had established a liaison after plaintiff was forced to go elsewhere for reasons of health is not discussed on defendant's appeal from decree of divorce for plaintiff where such testimony is not given any weight on *de novo* review and there was extensive testimony of other witnesses in regard to defendant's conduct.

5. DIVORCE—REDUCTION OF PERMANENT ALIMONY.
    On appeal in suit for divorce, decree awarding $6,000 permanent alimony, payable in three equal payments, a $500 attorney fee and $100 per month during plaintiff's lifetime, is ordered reduced by $2,000 so as to eliminate the last of the three such payments, in view of fact that defendant had owned much of the equipment used in his business before their common-law marriage became valid.

6. Same—Costs—Attorney Fees.

No further costs are allowed than $500 attorney fees awarded in common-law wife's suit for divorce, where neither party has fully prevailed on appeal.

Appeal from Wayne; Callender (Sherman D.), J. Submitted January 15, 1947. (Docket No. 18, Calendar No. 43,514.) Decided April 8, 1947.

Bill by Mary Stratos against Samuel Stratos, also known as Sam Stratos, for divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Affirmed.

*Peter D. Bartholomew* and *Bland A. Pugh,* for plaintiff.

*Blaine & Dombrowski* (*Maxwell I. Silverstein,* of counsel), for defendant.

Butzel, J. Mary Stratos, plaintiff, was granted a decree of divorce from her previous husband on November 12, 1928, and entered the employ of Samuel Stratos, defendant herein, later in the same month. She made her home with defendant and did his cooking, washing and cleaning. She also worked in defendant's custom hat shop where her duties consisted of sewing in hat linings and sweatbands. She testified that she frequently worked from 9 a.m. to 9 p.m. at the shop, taking off only sufficient time to prepare meals and attend to various household duties. Shortly after plaintiff went to work for defendant, a common-law marriage relationship was entered into by the parties. They not only presently agreed to take each other for husband and wife, but they lived and cohabited together, announced themselves to friends, relatives and the public as man and wife and were generally

recognized and accepted as such. Plaintiff testified that she had contracted syphilis from her former husband and was receiving medical treatment therefor when she went to live with defendant who was aware of her condition; and that the treatment was successful so that she was completely cured within 3 or 4 years after establishing her relationship with the defendant. Plaintiff asserts that during the entire course of their relationship the parties occupied the same bed; and that defendant made continual excessive sexual demands of her up to the very last day they lived together. Although exposed to the disease, defendant did not contract syphilis. Plaintiff further testified that as the result of working in defendant's drafty store where she was exposed to steam and the fumes of gasoline used in cleaning and repairing hats, she contracted a painful sinus and bronchial condition and suffered asthmatic attacks which affected her heart. In 1944, on the advise of her physician, and with defendant's consent and assistance, she went to Arizona for her health. She claims, however, that soon after she arrived in Arizona the defendant refused to send funds for her support and left her stranded there; and that she learned that in her absence defendant had established a liaison with another woman, one Lydia Lester.

Defendant claims that he had no knowledge of plaintiff's condition when he began living with her; and that sometime in 1932 or 1933 he learned for the first time that she was suffering from a venereal disease and immediately ceased having sexual relations with her. He denies the existence of a common law marriage relationship. It is significant, however, that prior to the filing of the bill in the instant case, defendant had filed a bill of divorce in which he set forth all the elements of a common-law mar-

riage and asked for an absolute divorce from plaintiff. A *pro confesso* decree of divorce was entered and subsequently set aside because of ostensible fraud practiced on the court as well as on plaintiff herein with reference to the affidavit of residence. The trial court found defendant unworthy of belief and characterized some of his testimony as "plain perjury." The trial court was inclined to accept as truthful the testimony of plaintiff. Many of plaintiff's claims were corroborated by defendant's own testimony on cross-examination by counsel and interrogation by the court. A reading of the record convinces us that the trial court was fully justified in discounting defendant's veracity. There was testimony to the effect that on several occasions plaintiff did ask defendant to marry her; this, however, was fully explained by plaintiff who stated that because of her religious convictions she desired a marriage ceremony. Defendant consistently rejected such requests.

The trial judge granted plaintiff a decree of divorce and awarded her as alimony the sum of $6,000, payable as follows: $2,000 on or before 30 days from the date of the decree, $2,000 on or before 6 months from that date, and $2,000 more on or before one year from that date. In addition thereto he ordered defendant to pay to the friend of the court for the support and maintenance of plaintiff the sum of $100 per month in advance, starting within four weeks from the date of the decree, and to continue to pay a like sum each and every month thereafter during the remainder of the life of plaintiff. He also ordered defendant to pay a fee of $500 to plaintiff's attorneys, one half within 30 days, and the balance within 60 days from the date of the decree. The original opinion of the court provided that the payments of $100 a month should be-

gin within a year after the date of the decree. The decree, however, provides that the payments of $100 per month should begin four weeks after the date of the decree.

Numerous questions are raised on appeal. In 1928, when plaintiff went to live with defendant, she was still receiving medical treatment for a venereal disease and, therefore, was incapable of contracting a marriage. 3 Comp. Laws 1929, § 12695 (Stat. Ann. § 25.6). Several years elapsed during which plaintiff successfully responded to treatment and was cured. Throughout the period of plaintiff's treatment and for a considerable time thereafter, the parties lived as husband and wife. The impediment to marriage having been removed, the continued cohabitation of the parties under the circumstances hereinbefore set forth resulted in a valid common-law marriage. *Hess* v. *Pettigrew,* 261 Mich. 618. Also, see *In re Fitzgibbons' Estate,* 162 Mich. 416 (139 Am. St. Rep. 570). The cases cited by appellant on this issue are those in which there was insufficient proof to establish a common-law marriage relationship. In the instant case, however, there is not only the sworn bill of complaint in the divorce proceeding originally brought by defendant against plaintiff, but appellant's own testimony on cross-examination:

"*Q.* You agreed to go together. You did have an agreement?

"*A.* Yes, sir.

"*Q.* This agreement you had, was that you were going to live together?

"*A.* Yes.

"*Q.* And that she was going to be known as your wife and that you were going to be known as her husband, is that right?

"*A.* Yes, sir.

"*Q.* And were you known as husband and wife?
"*A.* Yes.
"*The Court:* What is your answer?
"*A.* Yes, Your Honor."

Appellee testified as follows:

"*Q.* And he took you as his wife and you took him as your husband?
"*A.* Yes, sir.
"*Q.* And you held yourselves out as man and wife?
"*A.* Yes, sir."

The parties continued to live as husband and wife for a period of over 10 years after plaintiff was cured of her venereal disease and no question was raised by defendant until, with his approval and assistance, plaintiff departed for Arizona for reasons of health and was succeeded by another woman.

Plaintiff's attorneys called Lydia Lester, presumably as an adverse witness. She stated that she was employed by defendant in his business for which she received $12 per week; that she also began to "keep house" for defendant in August, 1944, and subsequently entered into an arrangement with defendant whereby she rented the house and he paid her $25 per week for his own room and board. She testified that she personally bought and paid for $1,200 of furniture and that she purchased from defendant some costly household equipment already in the house when she moved in; that she purchased an automobile and a silver fox coat; and that the greater portion of the moneys for these various purchases was advanced to her by a brother who is a farmer in Illinois.

Hal G. Lester, the estranged husband of Lydia Lester, was called as a witness by plaintiff's attorneys for the purpose of impeaching her testimony.

His testimony was objected to by defendant's counsel on the ground that it was "irrelevant and immaterial" and not on the ground first advanced in defendant's brief that there is a statutory prohibition against the admission of such testimony (3 Comp. Laws 1929, § 14221, as amended by Act No. 82, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14221, Stat. Ann. 1946 Cum. Supp. § 27.916). The trial court permitted the witness to testify over the general objection of defendant's counsel; and testimony was taken concerning communications made to the witness by his wife. This testimony could hardly have influenced the decision of the trial court in view of the extensive testimony of other witnesses in regard to defendant's conduct. We, therefore, do not deem it necessary to discuss the admissibility of the husband's testimony and the sufficiency of the objection made thereto. In reviewing the case *de novo*, we have not given any weight to this testimony.

Finally, appellant contends that the decree entered by the lower court is unjust, inequitable and oppressive because of the large amount of alimony awarded plaintiff. Plaintiff claims that all savings from the earnings of the business, in which she was an active participant, were kept in a strong box in the home where, for 16 years or thereabouts, the parties lived; that moneys accumulated from time to time were frequently counted, and that there was $9,500 in the strong box when plaintiff left for Arizona. It was shown that the household goods were valued in the neighborhood of $2,000 when plaintiff departed; and that defendant's business had assets of approximately $3,000. It was further shown that defendant's net return from his business is from $650 to $800 per month, although this is denied by defendant. The statement prepared from a memorandum book kept by defendant would show the

net return from the business is approximately $250 per month. Plaintiff claimed that when she left for Arizona she was the owner of a silver fox fur coat which was lost in transit after defendant had forwarded it to her in Arizona, and that defendant had recovered $600 therefor from the insurance company and retained the money. It is not denied, however, that defendant had remitted almost the same amount to plaintiff during the early months of her sojourn in Arizona. Upon the order of the trial court the friend of the court released to plaintiff $350 in cash and United States war bonds having a maturity value of $325, which was all that remained in defendant's strong box. Defendant's counsel claim that the excessively large award of alimony made by the trial court would defeat its own purpose inasmuch as defendant would find himself unable to continue the operation of his business with such a staggering liability. Plaintiff shows that she is in debt for large sums to various doctors and friends who have assisted her. In addition, there is little doubt that plaintiff has not received a proper share of the value of the household goods which were taken over by Lydia Lester for defendant's convenience. It is true that defendant's stock and business equipment is inventoried at approximately $3,000; it consists almost entirely, however, of items which cannot be readily converted into cash and, if at all, for a much lesser amount. It is also noted that defendant was in business and owned much of this equipment prior to his meeting the plaintiff.

In view of the foregoing, we believe that the award of permanent alimony should be reduced by $2,000 so that the last payment of that sum provided for in the decree is set aside. In all other respects the decree is affirmed. As neither party

has fully prevailed, there should be no further costs in addition to the $500 attorney fees awarded plaintiff's counsel by the trial court.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.