## CARNER v. SEARS, ROEBUCK & COMPANY.

1. WORKMEN'S COMPENSATION—PERSONAL MISSION OF EMPLOYEE.
   An employer may not be charged under the workmen's compensation act with the risk of an employee incurring injury while the employee was upon a personal mission.

2. SAME—ACCIDENT ARISING OUT OF AND IN COURSE OF EMPLOYMENT.
   An accident must be one arising "out of" as well as "in the course of" employment in order to be compensable (CL 1948, § 412.1).

3. SAME—PROXIMATE CAUSE—"OUT OF" EMPLOYMENT.
   To arise "out of" the employment, the injury sustained must have a causal connection with the work to be performed, must be one which follows a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom (CL 1948, § 412.1).

4. SAME—PROXIMATE CAUSE.
   An injury compensable under the workmen's compensation act must have arisen from a causative danger peculiar to the work, incidental to the character of the business and not independent of the relation of master and servant and while it need not have been foreseen or expected after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

5. MASTER AND SERVANT — DEVIATION FROM ROUTE — RETURN — DISTANCE.
   A servant whose duties take him upon the highways in the performance of his master's business and who so deviates from his direct route as to suspend the relation of master and serv-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 58 Am Jur, Workmen's Compensation §§ 227, 240.
[1, 5, 6] Workmen's compensation: Deviation on personal errand as affecting question whether injury to employee on street or highway arose out of and in the course of employment. 76 ALR 356.
Injury to employee while temporarily engaged in personal business. 59 ALR 370; 66 ALR 756.
[2–4] 58 Am Jur, Workmen's Compensation §§ 209–212.

ant does not restore such relation until he has reached a point on his direct route less distant than the place of departure from his master's business, some place where, in the performance of his duty, he should be.

6. Workmen's Compensation—Deviation from Route—Distance from Destination.

The death of plaintiff's decedent, a salesman-serviceman for sewing machines for defendant's retail store did not arise "out of" his employment where fatal injuries were received as the result of a highway accident at a place at a greater distance from customer's home than point of departure from the most direct route while he was returning from a personal mission (CL 1948, § 412.1).

Adams, Bushnell, and Boyles, JJ., dissenting.

Appeal from Workmen's Compensation Commission. Submitted March 21, 1953. (Docket No. 61, Calendar No. 45,535.) Decided June 22, 1953. Rehearing denied October 5, 1953.

Mabel T. Carner, widow of George Carner, presented her claim for compensation for death of her husband against Sears, Roebuck & Company, employer. Award to plaintiff. Defendant appeals. Reversed.

*Ronald M. Ryan* (*Edward J. Ryan,* of counsel), for plaintiff.

*Russell W. Conroy,* for defendant.

Boyles, J. (*dissenting*). Plaintiff, as the widow surviving her husband George Carner, was allowed dependency compensation* by the workmen's compensation commission because of his death from an injury received while an employee of the defendant company. On leave granted the defendant appeals in the nature of certiorari, and the principal question involved is whether his injury arose in the course of his employment.

---

* CL 1948, § 412.6 (Stat Ann 1950 Rev § 17.156).

Plaintiff's decedent was employed by defendant in its retail store in Battle Creek as a salesman-serviceman in its sewing machine and vacuum sweeper department. A sewing-machine customer who lived in Marshall, 12 miles east of Battle Creek on US–12, had requested that he deliver a certain sewing-machine attachment to her home. At noon, November 23, 1949, while eating lunch at home he told his wife he had to deliver a buttonhole attachment in Marshall and show how to use it, and suggested that they go together to her sister's home in Marshall for supper. She made the arrangement by telephone with her sister, and later went to defendant's store in Battle Creek, from which place they left together for Marshall shortly before 4:30 p.m. They arrived in Marshall about 5 o'clock. Before delivering the appliance he drove to the home of her sister where they were to have supper and left his wife there. In doing so he drove his car into Marshall east on US–12, past the Linden street intersection where he could have turned north 2 blocks and east a half block on West Prospect street to his customer's home. After leaving his wife, some considerable distance across the town in the southeast part, he drove north as far as Prospect street, on which his customer lived, and was then proceeding west on Prospect street toward his customer's home to deliver the appliance when his automobile was struck by another at an intersection about 6 blocks east of the home where he was to make the delivery. He died as a result of the collision.

Plaintiff concedes that the decedent had deviated from the ambit of his employment by passing Linden street and going to her sister's home, but claims that the deviation had ended and that he was again carrying out work for his employer on the way to his customer's home on Prospect street when the accident occurred. The commission awarded com-

pensation on the ground that he had completed his personal mission which caused the deviation, and that he was injured while within the ambit of his employment.

Mr. Carner's personal mission was solely to leave his wife at her sister's home and the finding of the commission that he had completed his personal mission before the time and place of this accident is supported by competent evidence. However, the finding that he was engaged in the course of his employment, in the business of his employer, at the time when and the place where he was injured, is not quite so obvious. He was not on the most usual or direct route to be followed in the course of his employment to make the delivery, but had deviated therefrom and was approaching the place of his delivery on the proper street but about 6 blocks distant, and from an opposite direction, when injured.

Mr. Carner's employment was not limited to working in his employer's store during working hours from 8:30 a.m. to 5:30 p.m. His work included selling and servicing sewing machines outside the store, in a territory including Marshall and Calhoun county, a radius of approximately 25 miles. He solicited sewing-machine customers and serviced machines within his territory, either during daytime working hours or afterward, sometimes at night. He used his own car, had discretion to come and go as he saw fit in order to promote sales and also to service machines. Where or when he would go on business for his employer, such as calling on prospects, delivering or servicing machines, was left to his own discretion. He was expected to make sales and service machines whenever he could, within his territory. In connection with his driving his automobile in the servicing and sale of sewing machines and other appliances, he was allowed mileage for the use of his car and paid both a salary and commission. Such circum-

stances distinguish the instant case from various decisions of the Court where an employee who is required to travel and return in the most direct route has deviated therefrom for his own personal use, cases where the injury occurred during the course of such deviation and before return to route, and at a place where the employee at the time of injury was not in the course of performing any mission or duty for his employer. In such cases it has been held that the employee had departed from the scope of his employment on a personal mission, had not resumed work for his employer, and as a result the injury did not arise in the course of his employment. See *Brinkman* v. *Zuckerman,* 192 Mich 624; *Irwin* v. *Williamson Candy Co.,* 268 Mich 100; *Jeffries* v. *Jodawelky,* 304 Mich 421; *Conklin* v. *Industrial Transport, Inc.,* 312 Mich 250.

In *Murphy* v. *Kuhartz,* 244 Mich 54, the employer owned trucks and was engaged in the business of carting furniture to various parts of Detroit. An employee had completed a delivery about 4 miles from the warehouse to which it was his duty to return and report the delivery before going to the garage. Without returning to the warehouse by the most direct route south and west of Woodward avenue, he crossed to the east side of Woodward and went a considerable distance in an opposite direction to have dinner at his home. Later, on his return to work, an accident occurred at an intersection after the driver had passed the garage on the east side of Woodward on a direct route between the garage and the warehouse, the shortest route to be traveled by the employee from the garage to the warehouse, where he was to report. The Court held that his service to his employer had been resumed, and that he was in the course of his employment. The Court said:

"When he reached this route at a point less distant than the last place of delivery, he had completed the trip which he had taken on his independent business and had re-entered the employment of his master. He was then engaged in no business of his own but was exclusively in the service of his master."

Emphasis must be placed on the last sentence of the above quotation. See *Irwin* v. *Williamson Candy Co., supra,* where the Court so holds, and where the opinion in *Murphy* v. *Kuhartz* is explained.

Appellant relies on *Haggar* v. *Tanis,* 320 Mich 295. In that case the employee's sole duties for his employer were to care for furnaces in 3 buildings on the east side of Burdick street in Kalamazoo. He had no duties to perform for his employer elsewhere. He was injured while crossing Burdick street from west to east on his return to his work, from lunch at a restaurant. In the instant case, the decedent's duties for his employer were co-extensive with the entire county, including the city of Marshall. He had the right to be on Prospect street where he was at the time of the accident. When he was performing a mission for his employer at that time and place, he was in the course of his employment for his employer. That circumstance distinguishes it from the *Haggar Case, supra.* Furthermore, in the case at bar the decedent's duties, within the ambit of his employment, required him to be on the streets of Marshall and the highways of Calhoun county while driving his automobile. The employee in the *Haggar Case* had no duty to perform for his employer on Burdick street, and there was no causal relation between his presence there and his duties as a janitor in the buildings.

In *Wilhelm* v. *Angell, Wilhelm & Shreve,* 252 Mich 648, plaintiff's decedent was supervisor for a construction firm, whose duties included travel on the

highway. While so doing, he met with a fatal accident. In reviewing the commission's denial of compensation, the Court said:

"If, in the discharge of his duties, the employee is required to travel upon the highway or to use other means of transportation, and while so doing, in the performance of a service to his employer, he suffers an accidental injury caused by his so traveling, he is entitled to compensation."

In the case at bar there was testimony to support the commission's finding that the decedent was performing a mission for his employer, in the course of his employment, when injured. The manager of the defendant company testified:

"*Q.* If he was delivering a buttonholer to a customer in Marshall, also calling on that customer to give some instructions about the buttonholer, or the machine, that would be a part of his job?
"*A.* It would."

"The principal issue in this case is whether plaintiff's injury arose out of and in the course of his employment. We have repeatedly held that the question of whether an injury can be said to have arisen out of and in the course of the employment depends upon the particular facts and circumstances of each case. Under the statute (CL 1948, § 413.12 [Stat Ann 1949 Cum Supp § 17.186]), findings of fact by the workmen's compensation commission are, in the absence of fraud, conclusive, if supported by competent evidence." *Tegels* v. *Kaiser-Frazer Corporation,* 329 Mich 84.

A misunderstanding sometimes arises due to the failure to distinguish between cases where the employee had deviated from a required most direct route and was injured before he had returned to such a place, and cases like the one at bar where the employee was not limited by his employment to

the shortest or most direct route. In *Murphy* ·v. *Flint Board of Education*, 314 Mich 226, sometimes cited in support of appellant's contention that the injury of this decedent did not arise in the course of.his employment, the Court discussed at length many decisions of this Court, in deciding whether the injury in that case arose *both* out of and in the course of his employment. In passing on the question whether the injury arose *in the course of* the plaintiff's employment we held (syllabus):

"An injury is received 'in the course of' employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform (CL 1929, § 8417, as amended by PA 1943, No 245*)."

Contrary to what has been said on behalf of the appellant, the decedent's duties to his employer were not circumscribed within the hours from 8:30 a.m. to 5:30 p.m. Where and when he went, in the performance of his duties, within the city of Marshall or in Calhoun county, was left to his discretion. His duty did not require him to take the most direct route from his business in Battle Creek to the home of his customer in Marshall.

It should be emphasized that plantiff's decedent was solely on the exclusive business of his employer and not engaged in any business of his own at the time of his injury,—the yardstick required by *Murphy* v. *Kuhartz* and *Irwin* v. *Williamson Candy Co., supra.* Nor should we be understood as opening the door to an award of compensation regardless of the distance away from the place of employment when injured. "Distance" is not the yardstick controlling the case at bar. In this case, the decedent at the time of his injury was within the ambit of his

_____

* CL 1948, § 412.1 (Stat Ann.1950 Rev § 17.151).—Reporter.

duties to his employer while on any street or high-way in Calhoun county; when injured he was solely on one mission and that was for his employer; he had not deviated from any fixed and regular route for his employer, because he had none; he was within the ambit of his employment, en route solely to perform a mission for his employer, on a street where he had a right to be for that purpose, when injured.

Under the circumstances of this case, the finding of the commission that the injury to plaintiff's decedent resulting in his death arose in the course of his employment is supported by competent evidence.

A second question urged by appellant for setting aside the award is that the claimant was not the lawful widow of the decedent—that a claimed common-law marriage had not been established. The commission found to the contrary. The claimant and the decedent had entered into a ceremonial marriage February 8, 1935. Shortly afterward the question arose whether the decedent's former wife had obtained a divorce. On advice of an attorney, they lived apart for a short time until assured that the decedent's former wife's interlocutory decree of divorce had become final. Thereafter they cohabited together and held themselves out to be husband and wife, from 1935 until his death in 1949. While there were several short interruptions from living together, due to his business as a salesman, while they moved about from place to place and lived in various places, and also due in part to his drinking habits and becoming intoxicated, they lived and cohabited together without any interruption from early in 1942 until his death in 1949. There was competent testimony to support the finding of the commission that they were husband and wife at the time of his death.

" 'Where parties to an agreement and relationship which, but for the existence of an impediment, would have constituted a valid marriage continue in the relationship in good faith, upon the removal of the impediment the law will establish between them a valid common-law marriage.'   38 CJ, p 1320." *Ryan* v. *Randall*, 252 Mich 501.

See, also, *In re Fitzgibbons' Estate*, 162 Mich 416 (139 Am St Rep 570); *People* v. *Lewis*, 221 Mich 164; *Hess* v. *Pettigrew*, 261 Mich 618; *Grammas* v. *Kettle*, 306 Mich 308; *Jones* v. *General Motors Corporation*, 310 Mich 605; *Stratos* v. *Stratos*, 317 Mich 113.

The award should be affirmed.

Adams and Bushnell, JJ., concurred with Boyles, J.

Sharpe, J.   I am not in accord with the opinion of Mr. Justice Boyles for reasons hereinafter stated.

In the case at bar, deceased, George Carner, owed the positive duty to exclusively engage in work for his employer from 8:30 a.m. to 5:30 p.m.   His injury occurred about 5:08 p.m.   When deceased left Battle Creek to go to Marshall, he was engaged in the business of his employer.   When he reached the intersection of Michigan avenue and Linden street, his duty required him to turn left on Linden street and travel 2 blocks north to Prospect street and about 1/2 block east on Prospect street to the residence of his customer, but instead of going the most direct route to his customer, he deviated and took his wife to the home of her sister in the southeast part of Marshall.   He then drove to the northeast part of the city until he came to Prospect street.   He then turned west on Prospect street, and was injured when approximately 6 blocks east of the residence of his customer.   When deceased failed to turn north

on Linden street, he departed from the ambit of his employment and entered upon a course of action disassociated from his work and was on a personal mission. While deceased was upon a personal mission, his employer could not be charged with the risk of deceased incurring injury.

It is admitted that when deceased deviated from the route at the intersection of Linden street and Michigan avenue, he was no longer in the relationship of an employee. This is so for the reason that the increased perils of the highway were not contemplated by the employer and were unrelated to the service deceased was to perform for his employer. The problem before us is to determine at what point, if any, deceased again resumed the relationship of an employee in his return from the home of his sister-in-law.

In *Meehan* v. *Marion Manor Apartments*, 305 Mich 262, we had occasion to determine when an accident arises out of employment.*  We there said:

"An accident, to be compensable, must be one arising 'out of' as well as 'in the course of' the employment. *Appleford* v. *Kimmel*, 297 Mich 8. To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom. See *Appleford* v. *Kimmel, supra; Dent* v. *Ford Motor Co.*, 275 Mich 39; *Rucker* v. *Michigan Smelting & Refining Co.*, 300 Mich 668."

See, also, *Murphy* v. *Flint Board of Education*, 314 Mich 226.

In *Appleford* v. *Kimmel*, 297 Mich 8, the following language from *McNicol's Case*, 215 Mass 497 (102 NE 697, LRA1916A, 306), was quoted with approval:

---

* See CL 1948, § 412.1 (Stat Ann 1950 Rev § 17.151).—REPORTER.

"But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In *Murphy* v. *Kuhartz*, 244 Mich 54, we had occasion to determine when the relationship of an employee is restored after a deviation. We there said:

"There are cases which hold that where a servant in driving his master's truck so deviates from his regular route as to suspend the relation of master and servant, it is immediately restored when he starts to return. A leading case of this class is *Riley* v. *Standard Oil Co.*, 231 NY 301 (132 NE 97, 22 ALR 1382). But by better authority it is held that the relation of master and servant is not restored until he has returned to the place where the deviation occurred or to a corresponding place, some place where, in the performance of his duty, he should be."

We, also, held in the above case that the driver of the car did not resume his master's service until he reached a point on his route less distant than the place of departure from his master's business.

In *Irwin* v. *Williamson Candy Company*, 268 Mich 100, we had occasion to comment on our opinion in the *Murphy Case, supra.* We there held that the "master is not liable for negligent act of servant who had departed from direct route and had not returned to a place where his duty required him to be, al-

though the place of occurrence of act was less distant from destination than point of deviation." We there said:

"*Brinkman* v. *Zuckerman,* 192 Mich 624, as indicated in *Murphy* v. *Kuhartz, supra,* is authority for the rule that, in case of a departure from the route, the master is not liable until the servant gets back on a direct route to the place where his duty requires him to be. As applied to the instant case, Mills had not reached the direct route to Flint when he crossed Second at Seward. The effect of appellant's argument would be to construe *Murphy* v. *Kuhartz, supra,* as holding that when a servant reaches a point less distant from his proper destination than the point of deviation, he would then reenter the employment of his master. Such is not the meaning of the decision, nor is it a proper construction of the language of the opinion. * * *

"The emphasis must be placed on the last sentence of the quotation. To place a different construction upon the decision would result in absurd applications of the rule. Cases would be determined by comparisons of distances rather than upon proper consideration of the facts. Servants who engage in larks or escapades of their own, wholly unrelated to the business of their master, would thereby subject the master to damages. Such is neither the contemplation of the law nor the intent of our holding in that case."

In my opinion, the purpose of the decision in the *Irwin* v. *Williamson Candy Company Case, supra,* was to close the door to the possibility of using the *Murphy* v. *Kuhartz,* decision, *supra,* in such a way as to allow a determination that the employer and employee relationship has been resumed on a comparison of distances alone. Something more is required, and that is that the employee must be in the exclusive business of his employer and not engaged in any business of his own. The effect of the

decision of Mr. Justice BOYLES would be to open the door to a determination being based on a finding that the employee was on a direct route to performing some duty for his employer, regardless of the distance away from the place of employment.

Other cases helpful in determining at what point the employer-employee relation is resumed after a deviation are collected in 22 ALR 1409, 45 ALR 486, 50 ALR 1450, and 68 ALR 1056. The answer to the question of, at what point does an employee resume the relationship of an employee after deviation, is answered in the *Murphy Case, supra,* on the question of "distance," and the *Irwin Case, supra,* on the question of "being engaged in the exclusive business of the employer." Both of these conditions must exist before there can be recovery. It is conceded that deceased cannot meet the requirment of "distance."

The award is vacated, with costs to appellant.

DETHMERS, C. J., and CARR and REID, JJ., concurred with SHARPE, J.

BUTZEL, J., did not sit.